

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1866 | **DATE** | 3/7/2002 |
| **CASE TITLE** | United States ex rel. Gregory Madej vs. Jerry Gilmore | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Gregory Madej's petition for habeas corpus pursuant to 28 U.S.C. Section 2254.

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons set forth in the attached Memorandum Opinion and Order, this Court grants Madej a writ of habeas corpus with regard to his death sentence (Claims I and XXVII) and orders that the state resentence him in a manner that comports with the individualized sentencing requirements of the Eighth Amendment within sixty (60) days of the date of this order.    This Court denies relief as to claims II through XXVI and claims XXVIII through XXXI.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | MAR 0 8 2002 | | |
| | Notified counsel by telephone. | | date docketed | | |
| X | Docketing to mail notices. | | | | |
| X | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| klb (lc) | courtroom deputy's initials | | | | |

U.S. DISTRICT COURT
CLERK
02 MAR -8 AM 11: 04

Date/time received in
central Clerk's Office    mailing deputy initials

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

United States ex rel. GREGORY MADEJ,
A91848,

                           **Plaintiffs,**

        v.

JERRY GILMORE, Warden, Pontiac
Correctional Center,

                    **Defendant.**

No. 98 C 1866

The Hon. David H. Coar

DOCKETED
MAR 0 8 2002

## MEMORANDUM OPINION AND ORDER

Before this court is petitioner Gregory Madej's ("petitioner" or "Madej") petition for habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, this court grants the petition in part and denies it in part.

### I. Factual Background

Petitioner is incarcerated at the Pontiac Correctional Center under a sentence of death for the 1981 felony murder of Barbara Doyle predicated on the felonies of armed robbery, rape, and deviate sexual assault. In reviewing a habeas petition, the Court presumes the factual findings of the state court are correct. 28 U.S.C. § 2254(e)(1). The facts are set out in great detail in the Illinois Supreme Court's opinions on direct review and the post conviction proceedings and are hereby incorporated by reference. See People of the State of Illinois v. Madej, 478 N.E.2d 392, 106 Ill.2d 201 (Ill. 1985) (Madej I); People of the State of Illinois v. Madej, 685 N.E.2d 908, 226 Ill.2d. 116 (Ill. 1997) (Madej II).

The following facts regarding the crime are taken from Madej I and Madej II. The naked body of Barbara Doyle was found in an alley on the northwest side of Chicago in the early morning hours of August 23, 1981. She had been stabbed and slashed approximately 34 times. There were numerous lacerations of the head and face, and multiple abrasions of the chest, legs and feet. A post-

mortem examination revealed the presence of spermatoza and semen in both the vagina and rectum of the victim. Human blood was found underneath her fingernails.

At trial, two Chicago police officers testified that at 5 a.m. on August 23, 1981, they observed a green Plymouth Baracuda automobile with a faulty muffler drive through a stop sign. The car driven by the defendant, was later determined to be the victim's auto. The police attempted to pull the car over, but the defendant speeded up, leading police on a high-speed chase. Several police cars joined the chase as defendant sped through red lights in excess of 80 miles per hour. The defendant eventually pulled into an alley and tried to escape by foot. He jumped a fence and hid under an auto parked on a nearby street before being taken into custody. When the officers arrested defendant, his hands, head, shirt pants and undershorts were covered with blood which was later determined to be blood of the same type as that of the victim, type O. The victim's automobile was likewise stained with blood, mostly in the area of the passenger's seat. Upon searching the vehicle, police officers recovered a large knife as well as Barbara's jeans and blouse, both of which were saturated with blood. The blouse had numerous perforation marks in the front. An empty prescription bottle bearing the victim's name was found in the car, together with her purse and personal identification papers scattered on the floor.

At the police station, Madej explained to the officers that he had been drinking at the Garage Inn tavern until 2:20 a.m., at which time he was thrown out for disorderly conduct. He then met a friend named "Hojamoto," who was driving Barbara's car. When Madej got into the vehicle to go "cruising," he noticed that Hojamoto was wearing a bloody shirt. Hojamoto told Madej that he had been in a gang fight. Madej then switched seats with Hojamoto, who jumped from the vehicle during the high-speed chase with the police. The police subsequently charged Madej with the murder of Barbara Doyle and other felonies. Prior to trial, defendant waived his right to have a jury.

## II. Habeas Corpus Standard

A writ of habeas corpus remedies a situation where a petitioner is held "in custody in violation of the Constitution or laws or treaties of the United States." Coleman v. Thompson, 501 U.S. 722, 730 (1991). Before a federal court can reach the merits of petition for a writ of habeas corpus under 28 U.S.C. § 2254, the petitioner must exhaust the available state-court remedies. Habeas corpus petitioners exhaust all of their state-court remedies when: (1) they present them to the highest court of the state; or (2) no state remedies remain available to the petitioner at the time that the federal petition is filed. See Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991).

Procedural default is also a barrier that generally prohibits a federal court from examining the merits of a habeas corpus petition. Procedural default occurs either when: (1) a petitioner fails to raise an issue on direct appeal or post-conviction review, see Farrell, 939 F.2d at 410; or (2) the state court clearly relies on a state procedural bar as an independent basis for its denial of relief. See Caldwell v. Mississippi, 472 U.S. 320, 327 (1985). If a petitioner has procedurally defaulted on any claim, this Court can only grant relief if: (1) there is adequate cause for his failure to raise the claim in state court and prejudice resulting from the default – i.e., "cause and prejudice" – Wainwright v. Sykes, 433 U.S. 72, 87 (1977); or (2) default would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

Even where a federal court reaches the merits of a petitioner's claim, relief is only warranted in certain circumstances. To prevail, a habeas corpus petitioner must show that adjudication of the case resulted in a decision that was:(1) contrary to, or (2) an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or, (3) based on an unreasonable interpretation of the facts in light of the evidence presented in the state-court proceedings. 28 U.S.C. 2254(d). The first ground pertains to pure questions of law. Lindh v.

Murphy, 96 F.3d 856, 868-69 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). The second ground pertains to mixed questions of law and fact. Id. at 870. To warrant relief, the state-court error must be "grave enough to be called 'unreasonable.'" Id. A state-court conclusion will stand if it is "one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 749 (7th Cir. 1997). A state court's application of Supreme Court precedent is reasonable if it is "at least minimally consistent with the facts and circumstances of the case." Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997). Finally, the third ground contemplates relief only where the facts are, by "clear and convincing evidence," demonstrably wrong. See 28 U.S.C. § 2254(e)(1).

### III. Discussion

Petitioner raises thirty one (31) claims for habeas relief. Each argument will be addressed in turn.

A.     Ineffective Assistance of Counsel at Sentencing (Claims I, II & III)

Petitioner alleges that he was denied effective assistance of counsel at sentencing due to counsel's failure to investigate and present mitigating evidence thus prejudicing the outcome of the sentencing proceedings in violation of the Sixth, Eighth, and Fourteenth Amendments (Claim I). Petitioner also alleges that he was denied effective assistance of counsel at sentencing due to his attorney's failure to inform him of the one juror rule (Claim II). Finally, petitioner claims he was denied effective assistance due to counsel's abdication of petitioner's defenses to death eligibility (Claim III).

**Ineffective Assistance of Counsel Standard**

The Sixth Amendment to the United States Constitution guarantees every criminal defendant the right to the assistance of counsel. USCA 6. To support an ineffective an ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984), a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) prejudice. Strickland, 466 U.S. at 695. In evaluating whether counsel's performance was deficient, "the court must defer to counsel's tactical decisions," avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. Id. at 689; Holman v. Gilmore, 126 F.3d 876, 881-82 (7th Cir. 1997). Prejudice is established if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364, 369, 122 L. Ed. 2d 180, 113 S. Ct. 838 (1993) (quotations omitted). The prejudice prong of Strickland requires petitioner to show "that a reasonable probability exists that, but for counsel's substandard performance, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Ashford v. Gilmore, 167 F.3d 1130, 1135 (7th Cir. 1999); Hall v. Washington, 106 F.3d 742, 749 (7th Cir. 1997). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," Strickland v. Washington, 466 U.S. at 679, and "only a clear error in applying Strickland's standard would support a writ of habeas corpus," Holman v. Gilmore, 126 F.3d 876, 882 (7th Cir. 1997); Porter v. Gramley, 112 F.3d 1308, 1312-14 (7th Cir. 1997).

1.    Mitigating Evidence

Petitioner argues that he was denied effective assistance of counsel during the aggravation/ mitigation phase of the sentencing hearing due to his attorney's failure to investigate potential mitigating evidence before trial. The sentencing hearing was held one day after petitioner was convicted. Madej II, 177 Ill.2d at 128. Apparently defense counsel did not explore mitigating evidence because he mistakenly believed that he would time to do so prior to the sentencing hearing if petitioner was found guilty at trial. Petitioner testified at the sentencing hearing.

Petitioner stated that he passed up the opportunity to use drugs and alcohol while in jail and that if released from prison he would never use drugs or alcohol again. Id. He also admitted using drugs since his teenage years and attributed his use of drugs to his troubled childhood. Id. Further he stated that drugs "had the greatest part to do with the case." Id. Finally, petitioner expressed remorse for his actions. Id. Petitioner's counsel introduced no other mitigating evidence. Id.

The Supreme Court of Illinois found counsel's failure to introduce mitigating evidence objectively unreasonable. Madej II, 177 Ill.2d at 136 (noting that counsel's "decision to forgo an investigation was neither the product of an informed judgment nor a strategic decision reached after weighing all available options"). After a review of the mitigation material in support of petitioner's amended petition for post conviction review, the Supreme Court of Illinois decided that no prejudice resulted from counsel's failure to investigate and present mitigating evidence. Id. at 137-38. Petitioner argues that the Supreme Court of Illinois' resolution of this issue was contrary to and/or an unreasonable application of established federal law. Respondent maintains that the Supreme Court of Illinois correctly applied Strickland to the claim and that its application of that standard was reasonable because petitioner was not prejudiced.

Petitioner first argues that the Supreme Court of Illinois should have applied the standard in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), rather than Strickland to adjudicate the ineffectiveness claim. In Cronic, the Supreme Court spoke of instances when counsel could be adjudged ineffective without a showing of prejudice. Cronic, 466 U.S. at 659. A showing of prejudice is not required if the accused is denied counsel at a critical stage of the trial or if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. Id. Cronic's rationale is based upon the language of the Sixth Amendment which "requires not merely the presence of counsel for the accused, but 'Assistance,' which is to be

'for his defence' . . . If no actual 'Assistance' 'for' the accused's 'defence' is provided, then the constitutional guarantee has been violated." Cronic, 466 U.S. at 654, n.11 (noting that "in some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided. Clearly, in such cases, the defendant's Sixth Amendment right to 'have Assistance of counsel' is denied"). "To hold otherwise could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." 466 U.S. at 654 (citation omitted).

The Cronic analysis is applied "sparingly." Toomey v. Bunnell, 898 F.2d 741, 744 n.2 (9th Cir. 1990); see also Childress v. Johnson, 103 F.3d 1221, 1229 (5th Cir. 1997). It is implicated only in cases where the petitioner alleges that his counsel was "not merely incompetent but inert." Childress, 103 F.3d at 1228; Tippins v. Walker, 77 F.3d 682, 686 (2d Cir. 1996) (defendant was constructively denied counsel when counsel slept through testimony of key witnesses). Cronic also applies when counsel fails to "play[] a role necessary to ensure that the proceedings are fair" because the Sixth Amendment "guarantees more than just a warm body to stand next to the accused during critical stages of the proceedings." Patrasso v. Nelson, 121 F.3d 297, 304 (7th Cir. 1997). If the petitioner alleges, on the other hand, that his counsel's performance was deficient, or incompetent, counsel's conduct will be evaluated under the Strickland two-part test. Childress, 103 F.3d at 1229; Scarpa v. Dubois, 38 F.3d 1, 15 (1st Cir. 1994), cert. denied, 513 U.S. 1129, 130 L. Ed. 2d 885, 115 S. Ct. 940 (1995) (Strickland applies to allegations of "maladroit performance" as opposed to "non-performance").

Cronic has been applied when counsel utterly failed to function as counsel by providing no assistance to the defendant. Rickman v. Bell, 131 F.3d 1150, 1157 (6th Cir. 1997) (prejudice was presumed when counsel combined a "total failure to actively advocate his client's cause with

repeated expressions of contempt for his client"); Blankenship v. Johnson, 118 F.3d 312, 317-18

(5th Cir. 1997) (defendant was constructively denied counsel when appellate counsel did nothing

on his behalf); Childress, 103 F.3d at 1231 (counsel offered no advice to defendant during guilty

plea and conducted no investigation or research to assist the defendant); Tucker v. Day, 969 F.2d

155, 159 (5th Cir. 1992) (presuming prejudice when counsel at re-sentencing failed to confer with

defendant and "made no attempt to represent his client's interests").

     In order to obtain relief under Cronic (and thus avoid the need to prove that he was

prejudiced by his counsel's performance) Madej must demonstrate that he was denied the

assistance of counsel such that the question of whether there was mitigating evidence to counsel

against imposing the death penalty was never subjected to "the crucible of meaningful adversarial

testing." Cronic, 466 U.S. at 656; Strickland, 466 U.S. at 686. The Sixth Amendment requires not

only the presence of counsel, but also the effective assistance of counsel for the accused's defense.

Cronic, 466 U.S. at 654. Applying these standards to the facts of Madej's case, this court finds that

Madej's counsel failed to conduct any investigation that would submit the question of Madej's

eligibility for the death penalty to "meaningful adversarial testing." Id. at 659.   Thus, prejudice

need not be shown.  In Patrasso, the Seventh Circuit evaluated counsel's failure to investigate and

present mitigating evidence at sentencing under Cronic.  Patrasso, 121 F.3d at 304 (noting that

defense counsel's performance was deficient not because of his failure to offer mitigating evidence

but rather because "he made no effort to contradict the prosecution's case or seek out mitigating

factors").  The court stated that "[c]ounsel must make a significant effort, based on reasonable

investigation and logical argument, to mitigate his client's punishment." Patrasso, 121 F.3d at 303-

4 (quoting Eddmonds v. Peters, 93 F.3d 1304, 1319 (7th Cir. 1997).

Since Patrasso was a pre-AEDPA case, however, respondent argues that it does not control because the Supreme Court has not clearly established that Cronic applies to cases where an attorney fails to investigate. Respondent's argument is unavailing. In Cronic, the Supreme Court clearly established that prejudice need not be shown when the attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing" 468 U.S. at 659. Patrasso is merely an illustration of a such a situation and thus gives this court guidance in interpreting the mandate of Cronic. Petitioner is entitled to relief because his attorney failed to investigate or present potential mitigating evidence and even conceded petitioner's eligibility for the death penalty. Under these circumstances, this Court can not be confident that Madej's right to the "assistance" of counsel was adequately safeguarded.

Even if this court were to find that Strickland, rather than Cronic, applies to Madej's claim then Madej would still be entitled to relief because Madej was prejudiced by counsel's failure to investigate mitigating evidence. An investigation by Madej's attorney would have led to the following evidence being introduced at the sentencing hearing: (1) a mother's testimony about her son, who defended her for years from physical abuse; (2) a plea for mercy to the jury from the decedent's husband; (3) testimony of a priest, Father Philipski, that petitioner was a good person; (4) evidence of a troubled childhood; and (5) expert testimony regarding the negative effects petitioner's history of substance abuse had on his psychological and neurological health. Instead, Madej had an unbalanced sentencing hearing where aggravating evidence was introduced but mitigating evidence was not, due to his attorney's failure to investigate. The Illinois Supreme Court committed clear error when it found that Madej was not prejudiced by his attorney's objectively unreasonable conduct in failing to investigate. The trial judge denied relief on petitioner's amended post-conviction petition without an evidentiary hearing. Madej II, 177 Ill.2d

at 137. In reviewing that decision, the Supreme Court of Illinois discussed whether the evidence

petitioner offered in mitigation was "inherently mitigating." Id. at 139. The court cited cases in

support of its position that the sentencing court was not "required" or under any "legal obligation"

to accept a history of substance abuse or of a troubled childhood as mitigating and could in fact

decide those were aggravating factors. Id. at 137-141. Essentially, the Illinois Supreme Court

decided as a matter of law that since substance abuse and a troubled childhood are not inherently

mitigating, Madej could not be prejudiced by counsel's failure to introduce them. The court looked

at each category of mitigating evidence in isolation. This is not the correct inquiry. The Supreme

Court of Illinois was required, under Strickland, to determine whether, in this particular case, there

is a reasonable probability the outcome would have been different based on all of the mitigating

evidence. As the Supreme Court explained:

> If a sentencer is to make an individualized assessment of the appropriateness of the
> death penalty, 'evidence about the defendant's background and character is relevant
> because of the belief, long held by this society, that defendants who commit
> criminal acts that are attributable to a disadvantaged background, or to emotional or
> mental problems, may be less culpable than defendants who have no such excuse.

Penry v. Lynaugh, 492 U.S. 302, 319 (1989) (quoting California v. Brown, 479 U.S. 538, 545

(1987). In this case, all the sentencing court had before it was the heinous nature of the crime. The

sentencing court stated "[t]he repeated acts of savagery perpetrated on the middle-aged woman

requires a sentence to meet the severity of the crime against her." Madej II, 177 Ill.2d 116 (quoting

the sentencing judge). The defense attorney offered absolutely no evidence about the defendant's

background or character at the sentencing hearing. There is a reasonable probability that Madej

would not have received the death penalty had that evidence been introduced. There can be no

confidence in the outcome of a capital sentencing hearing where the defendant was represented by

an attorney who failed to present any evidence to counsel against imposition of the death penalty. Habeas relief is granted on this ground.

2.     One-Juror Rule

Petitioner claims that his counsel was ineffective because he failed to inform him that under Illinois law that a jury must be unanimous in order to impose the death sentence. In other words, one sympathetic juror can block the imposition of the death penalty. Madej waived his right to jury sentencing without knowledge of the one-juror rule. The Supreme Court of Illinois found that counsel's failure to inform Madej of the one-juror rule was not ineffective representation because Madej was informed of his right to have a jury sentence him and waived that right knowingly and voluntarily. Madej II, 177 Ill.2d at 141. Petitioner claims that this was an unreasonable application of Strickland. In Whitehead v. Cowan, the Seventh Circuit explained that counsel's failure to inform his client of the one-juror rule will only support an ineffective assistance of counsel claim if there is some showing that counsel has no knowledge of the one-juror rule. Whitehead v. Cowan, No. 00-2091, 2001 U.S. App. LEXIS 19259 (7th Cir. August 29, 2001). Since petitioner has made no showing that his attorney was ignorant of the one-juror rule, only that he did not inform him of the rule, counsel's performance was not objectively unreasonable. The Supreme Court of Illinois' resolution of the issue was not unreasonable and relief is denied on this ground.

3.     Abdication of Petitioner's Defenses to Death Eligibility

Petitioner claims counsel was ineffective because he failed to offer any defenses to death eligibility, made a harmful stipulation to aggravating factors, and failed to oppose the State's case in aggravation. Specifically, counsel stipulated that defendant knew that his conduct created a strong probability of death. To be death eligible, the state had to prove beyond a reasonable doubt

-11-

that defendant acted either "intentionally or with the knowledge that the acts which caused the death created a strong probability of death or great bodily harm." Ill. Rev. Stat. 1985, ch. 38, par. 9-1(b)(6)(b). The Illinois Supreme Court found the claim to be waived because it was not raised on direct appeal. Madej II, 177 Ill.2d at 143. The court then examined whether appellate counsel was ineffective for failing to raise the claim on direct appeal. Finding that no prejudice existed, the court determined that counsel was not ineffective. Id. at 144. The question for this court is whether the Supreme Court of Illinois unreasonably applied federal law when it determined that counsel was not ineffective.

The Supreme Court of Illinois applied Strickland to petitioner's claim. Madej II, 177 Ill.2d at 143. Since both the objectively unreasonable and prejudice prong of Strickland must be satisfied, the Supreme Court of Illinois did not determine whether counsel's conduct in failing to raise the claim on direct appeal was unreasonable. Id. Instead, the court first looked to see if petitioner was prejudiced by counsel's omission. Id. The Supreme Court of Illinois determined that the trial judge did not base his finding of death eligibility on counsel's statement but rather on evidence presented at trial. Id. This court finds that the Supreme Court of Illinois' application of Strickland was reasonable. Given the trial judge's statement that death eligibility had been clearly established by the State's evidence, the Supreme Court of Illinois concluded that the outcome of the hearing would not have been different if petitioner's counsel had not conceded his state of mind. Id. at 144-45. This Court finds that determination reasonable and denies habeas relief on this ground.

4.    Cumulative effect

This court finds that the cumulative effect of counsel's errors make Petitioner's sentencing hearing patently unreliable. In William v. Washington, the Seventh Circuit found that

-12-

a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet Strickland's test. 59 F.3d 673, 682 (7th Cir. 1995). Counsel did not investigate or put forth evidence that Madej had a troubled childhood, a history of drugs and alcohol, or that the victim's husband did not want Madej put to death. Counsel's lack of investigation combined with his failure to inform his client of the one-juror rule, provided Madej with a sentencing hearing significantly different than the hearing he might have experienced if represented by a competent attorney. If counsel had introduced the mitigating evidence to a jury rather than the judge it is certainly reasonable to think that at least one juror would have declined to impose the death sentence. In Brewer v. Aiken, the Seventh Circuit found that prejudice existed from the failure to introduce mitigating evidence even if the judge would not have changed his mind because the evidence might have changed a jury's mind. 935 F.2d 850 (7th Cir. 1991). Thus, there exists a reasonable probability that Madej would not have been sentenced to death. For this reason, Madej is entitled to habeas relief in the form of a new sentencing hearing.

B.    Violation of Right Against Self-Incrimination and Right to Choose Whether to Testify
       (Claim IV)

Petitioner claims that he was denied his rights under the Fifth, Sixth, and Fourteenth Amendments when his counsel denied him his right against self-incrimination and right to choose whether to testify. Petitioner was the sole witness for the defense. He testified that he met Barbara Doyle at a bar on the night of the 22nd, and afterward drove with her to the Golden Flame restaurant (which contradicted his earlier statements to police). He then testified that after leaving the Golden Flame restaurant, he and Doyle drove around and consumed large quantities of drugs and alcohol. Petitioner also testified that he and Doyle stopped several times and engaged in consensual sex. Petitioner testified that Doyle attacked him with a knife after he fended off her attempt to steal some of his drugs. The next thing he remembered was laying Doyle on the ground outside the car,

and leaving in a state of panic.   On cross examination, petitioner admitted that he did not know anyone by the name of Hojomota (again contradicting his earlier statement in which he blamed the crime on Hojomota).

It is beyond question that a defendant's right to testify at trial is a fundamental constitutional right, as is his or her right to choose not to testify.  Rock v. Arkansas, 463 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).  The Illinois Supreme Court accepted as true defendant's claim that he played no part in counsel's decision to have him take the stand.  People of the State of Illinois v. Madej, 685 N.E.2d 908, 922 (Ill. 1997).  This court will do the same.  On post-conviction review, the Illinois Supreme Court evaluated Petitioner's claim using solely a Strickland analysis.  Petitioner alleges that the Illinois Supreme Court's use of Strickland's prejudice test rather than Chapman's harmless beyond a reasonable doubt test to evaluate his claim is an unreasonable application of federal law.[1]

Respondent maintains that the proper standard on post-conviction review for the claim is Brecht v. Abramson[2] and that Chapman only applies to direct review.  Petitioner responds that Chapman must be applied because the Supreme Court of Illinois never applied that standard.  This court finds that Brecht is the correct standard.[3]  In Tyson v. Trigg, 50 F.3d 436, 446-47 (7th Cir.

---

[1]In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court dealt with a case where the prosecution made comments that the defendant's failure to testify implied his guilt.  The court found this to be constitutional error.  The court explained that the the beneficiary of a constitutional error must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.  Id. at 24.

[2]507 U.S. 619

[3]In Tyson v. Trigg, 50 F.3d 436, 446-47 (7th Cir. 1995), the Seventh Circuit rejected a claim that Brecht is applicable to constitutional claims made in federal habeas corpus proceedings only if the state appellate court, in reviewing the same claim of constitutional error, applied the more stringent standard (harmless error beyond a reasonable doubt) of Chapman v. California, 386 U.S. 18, 24 (1967). This is the same argument petitioner makes in its claim that Chapman should apply.

1995), the Seventh Circuit rejected the proposition that the <u>Brecht</u> standard is inapplicable unless the state courts have concluded an analysis of <u>Chapman</u> harmless error. In <u>Brecht</u>, the Supreme Court stated that the standard for determining whether habeas relief must be granted is whether the constitutional error "'had substantial and injurious effect or influence in determining the jury's verdict.' <u>Kotteakos v. United States</u>, 328 U.S. 750, 776, 90 L.Ed. 1557, 66 S.Ct. 1239 (1946). The <u>Kotteakos</u> harmless-error standard is better tailored to the nature and purpose of collateral review than the <u>Chapman</u> standard, and application of a less onerous harmless-error standard on habeas promotes considerations underlying our habeas jurisprudence." <u>Brecht</u>, 507 U.S. at 623.

While the Supreme Court of Illinois may have erred by not applying <u>Brecht</u> in addition to <u>Strickland</u> to petitioner's claim, it is clear that petitioner will not prevail under either standard. Petitioner claims that without his testimony there was no evidence to prove armed robbery or rape. However, as the Supreme Court of Illinois explained, the physical evidence showed that those crimes occurred.

> The evidence was that the victim's blouse had numerous slit marks, indicating that she was stabbed while clothed. However, her body was naked when discovered, indicating that the defendant first stabbed the victim and then removed her clothes to rape her. Too, the defendant had numerous scratch marks on his face and chest, and the victim had human blood under her fingernails. This supports the prosecution's theory that the victim struggled and fought the defendant until he stabbed her, tore off her clothes, raped her, and threw her naked body from the car.

<u>Madej I</u>, 106 Ill.2d at 218. The court also explained that the evidence showed that the purse and its contents and the auto were taken from the victim while the defendant was armed with a dangerous weapon, the knife. <u>Id.</u> at 217. All of this evidence was introduced independent of petitioner's testimony.

As noted by the Illinois Supreme Court, the other evidence admitted against Petitioner, apart from his own testimony, was so overwhelming that it "leads to the one, inescapable

-15-

conclusion that [he] was the person who committed these crimes." 177 Ill.2d at 147. Petitioner

was apprehended after leading the police on a high speed chase in the victim's car. Id. He was

covered with blood. Id. The victims' bloody blouse and pants were discovered in the car as well

as the murder weapon. Witnesses placed petitioner with the victim prior to her death. Id. All of

this evidence would have been introduced regardless of whether petitioner testified. Based on the

overwhelming evidence against petitioner, it can not be said that his testimony had "substantial and

injurious effect or influence in determining" the judge's verdict or his sentence. Habeas relief is

denied on this ground.

C.      Violation of International Treaty Rights (Claim V)

        Petitioner is a Polish citizen that was brought to the United States as an infant. He claims

that the Vienna Convention on Consular relations, April 24, 1963, 21 U.S.T. 77, and the Consular

Convention of 1972 between Poland and the United States, n1 May 31, 1972, 24 U.S.T. 1231, was

violated because he was never advised of his right to contact a consular official from his country,

Poland. Petitioner further claims that the United States was required to notify the consular post of

Poland that he was arrested. This court previously stated that petitioner never fairly presented this

claim to the Illinois state courts and had therefore procedurally defaulted. Madej v. Gilmore, No.

98 C 1866, 1999 U.S. Dist. LEXIS 4086, *10 (N.D. Il. March 23, 1999) (denying discovery on the

claim because petitioner did not exhaust all available state remedies). Since that time, however,

Madej presented his claim to the Illinois Supreme Court. See People of the State of Illinois v.

Madej, 193 Ill.2d 395, 739 N.E.2d 423 (Ill. 2000) (Madej III). The Supreme Court of Illinois did

not reach the merits of Madej's Vienna Convention claim because it was untimely raised as a

petition to obtain relief from his judgment of conviction. Madej III, 193 Ill.2d at 400. Madej was

convicted in 1982 and the statute of limitations for filing a petition for relief from the judgment is

two years. Id. Thus, Madej's claim was approximately fourteen years late. Id. The court

considered whether the statute of limitations was tolled in Madej's case and found that it was not.

Id. at 402 (because the Vienna Convention provided that the rights under the Convention were to

be exercised in conformity with the laws of the receiving state, the statute of limitations did not

disable the full effect to be given to the treaty). Thus, this court again finds that Madej's Vienna

Convention claim is procedurally defaulted because the state court clearly relied on a state

procedural bar as an independent basis for its denial of relief. See Caldwell v. Mississippi, 472

U.S. 320, 327 (1985).

This court further finds that there is no cause to excuse the procedural default. Ineffective

assistance of counsel can serve as cause to excuse procedural default. Murray v. Carrier, 477 U.S.

478, 488, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986). In this case, even if counsel were deemed

deficient for his failure to inform his client of his rights under the Vienna convention and to

preserve his claim, there is no prejudice. The Seventh Circuit has determined that exclusion of

evidence is not a proper remedy for violation of the Vienna Convention. United States v. Lawal,

231 F.3d 1045, 1048 (7th Cir. 2000). Thus petitioner's statement to the police would not have been

excluded nor would his indictment have been dismissed. Therefore, habeas relief is denied on this

ground.

D.     Ineffective Assistance of Counsel (Claims VI - VIII)

Petitioner alleges that he was denied the effective assistance of counsel at trial and pre-trial

proceedings (VI). He similarly alleges ineffective assistance on appeal (VII) and in post-conviction

proceedings (VIII). The rule set forth in Strickland is "clearly established Federal law," see

Williams, 529 U.S. at 390; Washington, 219 F.3d at 628, and provides that a petitioner claiming

the ineffective assistance of counsel must establish that: 1) "counsel's representation fell below an

objective standard of reasonableness" and 2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687-88; Precin v. United States, 23 F.3d 1215, 1218 (7th Cir. 1994). The first prong is satisfied by a showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. Barker v. United States, 7 F.3d 629, 633 (7th Cir. 1993) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)). To satisfy the second prong, the petitioners must show that because of counsel's errors, the outcome of their trial or sentencing was fundamentally unreliable or unfair. Id. Because counsel is presumed to have been effective, the petitioner bears a heavy burden in proving that counsel was ineffective and that their defense was prejudiced. Id.

     1.   Pretrial and trial proceedings.

         a.   No Theory of Defense/ Corroborating Testimony

     Petitioner alleges that trial counsel was ineffective because there was no theory of defense and counsel failed to present corroborating evidence of petitioner's testimony. Specifically, petitioner complains that trial counsel did not question another waitress from the Golden Flame restaurant about her statement that petitioner appeared to be high, or his brother who would have testified that petitioner had a history of drug and alcohol abuse. The Supreme Court of Illinois found that counsel's trial strategy "cannot be viewed as so unsound as to lead us to believe that he did not fulfill his obligation to provide a meaningful adversarial testing of the State's case." Madej, 177 Ill.2d at 149. It appears that counsel's theory of the case was that petitioner was suffering from diminished capacity at the time of the incident. Counsel cross examined the state's witnesses about the petitioner's ingestion of drugs and alcohol on the day in question, which corroborated petitioners's claim of diminished capacity. Counsel reminded the judge of that testimony during his closing argument. Id.

It is hard to see how petitioner was prejudiced by counsel's failure to put forth more witnesses to testify that he ingested a large quantity of drugs and alcohol on the day in question. Such evidence would have been cumulative because petitioner testified to the amount he consumed as did other witnesses. This Court finds that the additional testimony from petitioner's brother and acquaintances would not create a reasonable probability that the outcome would have been different in light of the overwhelming evidence presented at trial. The trial judge disbelieved the diminished capacity defense in part because of petitioner's ability to lead the police on a high speed chase, jump a fence, hide under a car, and then fabricate an exculpatory story. This evidence would not have been challenged by introducing more evidence of petitioner's intoxication. Thus, the Illinois Supreme Court's application of Strickland was not unreasonable and habeas relief is denied on this ground.

      b.     911 Tape

Petitioner asserts that defense counsel was ineffective because he could have pursued a reasonable doubt theory using a 911 tape recording which contains the conversation between the police officers who pursued petitioner and the police dispatcher who coordinated the pursuit. The tape referred to "'two male white suspects in the car.'" Madej II, 177 Ill.2d at 156. Petitioner further alleges that counsel could have argued that latent fingerprints recovered from the victim's car belonged to the second white male, and that counsel could have run tests on sperm and semen samples found at the crime scene. According to petitioner, this would have supported a reasonable doubt defense. Respondent alleges that any claim about the 911 tape is procedurally defaulted due to petitioner's failure to raise it on direct appeal or his amended petition for post-conviction relief in state court. The Illinois Supreme Court found that the argument was waived because it was not raised on direct appeal or in the amended petition for post-conviction relief. Madej II, 177 Ill.2d at

156.    Petitioner maintains that such procedural default should be excused due to sufficient cause and prejudice. He claims that appellate counsel was ineffective for failing to raise the claim.

The prejudice is unclear. Even assuming, arguendo, that appellate counsel was ineffective relief would not be warranted. If trial counsel were to pursue both a diminished capacity and a reasonable doubt theory the likely result would be that neither defense would be believed. On the one hand counsel would be claiming that Petitioner committed the offense but it should be excused due to his diminished capacity. On the other hand counsel would be claiming that petitioner did not do it because there was another person in the car with him that might have committed the crime. It is clearly within the realm of trial strategy to choose to pursue one defense over another, especially when they are inconsistent. In hindsight, perhaps counsel should have pursued the reasonable doubt defense rather than the diminished capacity defense but hindsight must be avoided in judging trial strategy. The attorney's conduct must be evaluated based on the information available at the time the decision was made. Based on the overwhelming evidence against the defendant at the time of trial, it was not unreasonable for counsel to choose to pursue a diminished capacity defense. Madej has not satisfied his burden under the Strickland prejudice prong because the mere possibility of success based on a defense for which there existed little or no evidentiary support is not enough to establish constitutionally inadequate counsel. See Strickland, 466 U.S. at 693, 104 S.Ct. at 2067-68. There is no evidentiary support for Madej's claim. The results of the DNA tests, which this Court ordered, showed that petitioner is the source of the sperm found in Barbara Doyle's vagina and rectum. Trial counsel was not ineffective for failing to pursue a reasonable doubt theory and relief is denied on this ground. Any claim Madej attempts to assert on actual innocence grounds similarly fails.

        c.        Failure to Obtain a Ruling on the Motion to Suppress

Petitioner made a statement to police which he claimed was involuntary. Madej maintains that he asked to speak with a lawyer but was never given a phone call. The questioning of Madej then resumed. Petitioner claims that defense counsel's failure to obtain a ruling on the motion to suppress prior to putting petitioner on the stand constituted ineffective assistance of counsel. Respondent maintains that, as decided by the Illinois Supreme Court, Petitioner was not prejudiced by counsel's failure to obtain a ruling on the motion to suppress.

The Illinois Supreme Court addressed this claim in great detail. See Madej II, 177 Ill.2d at 152-56. According to the Illinois Supreme Court, there was no prejudice because the motion did not seek to suppress Petitioner's statements and was destined to be denied. Madej II, 177 Ill.2d at 155. The motion sought to suppress certain tangible evidence but not inculpatory statements. Id. at 154. The Supreme Court of Illinois determined that Madej was not coerced by the denial of food and medical attention. Instead, the Court found that Madej's statement blaming the crime on Hojamoto was a "deliberate attempt on the part of the defendant to steer the police in the direction of another suspect." Id. at 156. Further, the Supreme Court of Illinois found that if the statement had been suppressed, it would not have changed the outcome of the case due to the overwhelming evidence against Madej. Id. Petitioner maintains that this is an unreasonable application of Strickland. According to the Petitioner, prejudice exists because if the statement had been suppressed then Petitioner would not have been impeached and the outcome of the proceeding would have been different. This, however, is pure speculation. Even without the impeaching statement, there is no reason to believe that Madej's diminished capacity defense would suddenly have been credible. To satisfy Strickland's prejudice prong, petitioner must show that counsel's errors had more than "some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693, 104 S.Ct. at 2067. Thus, habeas relief is denied on this ground.

d.    Trial Counsel Compelled petitioner to testify

Petitioner claims defense counsel was incompetent when he told Petitioner he had to testify in the case. Petitioner maintains that defense counsel's conduct violated his Fifth Amendment right to decide whether to testify. The Illinois Supreme Court accepted as true Petitioner's averment that he "played no part in counsel's decision to have him take the stand." Madej II, 177 Ill.2d at 145. The Illinois Supreme Court rejected petitioner's claim, however, because it determined that in light of the compelling nature of the evidence against Madej he could not demonstrate that he suffered prejudice.

Petitioner argues that the Illinois court's no-prejudice finding was unreasonable because "[e]vidence of a high-speed pursuit does not demonstrate that the offenses of armed robbery, rape and deviate sexual assault were proved beyond a reasonable doubt in this case"; the State put on an entirely circumstantial case"; and the court "ignore[d] ... that there was another suspect in the car with Petitioner..." However, as noted above, the "unreasonable application" standard "'allows the state court's decision to stand if it is one of several equally plausible outcomes.'" United States ex rel. Franklin v. Gilmore, 993 F. Supp. at 1170 (quoting Hall v. Washington, 106 F.3d at 748-49). The state court concluded that all of the evidence, save for the impeachment evidence during Petitioner's cross-examination, would have been introduced regardless of whether Petitioner testified, and inescapably shows that Petitioner was the person who committed the crimes. Madej II, 177 Ill.2d at 147. Thus, the Illinois Supreme Court's "no-prejudice" finding was a reasonable application of Strickland and petitioner is denied relief on this ground.

e.    Counsel Did Not Understand Applicable Law

Petitioner argues that his attorney committed a "plethora of errors at trial and sentencing as a result of his failure to understand applicable law." Such "failure to understand," according to

Petitioner, included: 1) unfamiliarity with the hearsay rule; 2) ignorance of the bifurcated capital process; 3) ignorance of the one-juror rule; 4) ignorance of the law for specific intent; 5) ignorance of the law of diminished mental capacity; 6) ignorance of the law of felony-murder and multiple penalties for a single act; and 7) ignorance of the law with regard to the defense of involuntary intoxication. Respondent maintains that these allegations were not presented to the state court and are, therefore, procedurally defaulted. Petitioner does not refute this allegation in its reply brief nor does petitioner attempt to offer sufficient "cause and prejudice" to excuse the procedural default. Thus, this Court will not address the merits of the claims.

Several of the other deficiencies petitioner alleges were raised in the Illinois Supreme Court. Petitioner contends that based upon trial counsel's alleged lack of experience with criminal cases, he attempted to learn the basic facts of the case from the State's witnesses, he cross-examined the witnesses ineffectively, he was ignorant of the adverse-witness rule, he was ignorant of how to impeach a witness with a prior conviction, he elicited testimony from witnesses that was harmful to the defense, and he failed to object to the trial court's speculation as to the age and cause of the petitioner's head wound.

The Illinois Supreme Court undertook a "thorough review of each of these errors, both individually and collectively," and found that petitioner's contention regarding his ineffective claim was without merit. Madej II, 177 Ill.2d at 157. Specifically, the court stated:

> In fact, we find nothing in the record to support defendant's claim that the alleged errors in this case were the product of an inexperienced trial counsel. We are mindful of the fact that "[j]udicial scrutiny of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Guest, 166 Ill.2d at 393, quoting Strickland, 466 U.S. at 689, 80 L.Ed. 2d at 694-95, 104 S.Ct. at 2605. Having eliminated the distortion of hindsight in this case, we conclude that defendant has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness on the basis of the foregoing trial errors.

Id. This Court finds that the Illinois Supreme Court's application of Strickland to the facts of this case was reasonable. Because counsel is presumed to have been effective, the petitioner bears a heavy burden in proving that counsel was ineffective and that their defense was prejudiced. See Strickland, 466 U.S. at 687. The Illinois Supreme Court determined that petitioner did not satisfy that heavy burden and such finding is based on the court's rational application of the pertinent legal doctrine to the facts of the case. Thus, habeas relief is denied on petitioner's claim of ineffective assistance of counsel at trial.

      2.    Appeal

Petitioner alleges in Claim XII that his appellate counsel was ineffective in failing to argue that police failure to preserve and test a bag of "crushed green plant" violated petitioner's right to a fair trial and death penalty hearing. At the time of petitioner's arrest, the police seized an item described as a bag of "crushed green plant," and placed the item on a police inventory sheet. The inventory sheet reflects that this evidence was seized from petitioner and sent to the crime lab. Petitioner alleges that the bag of "crushed green plant" could have corroborated his claim of diminished capacity. Petitioner seeks habeas relief due to the Illinois Supreme Court's "unreasonable selective review" of his ineffective assistance of appellate counsel claims. In his brief on appeal of the denial of post-conviction relief, petitioner argued that appellate counsel was ineffective for failing to raise, inter alia, "the prosecution's knowing use of false testimony regarding the crushed green plant, and misstatements of the record regarding the 911 tape..." as well as "the prosecution's false representation that the deceased's pants were 'torn'..." The Illinois Supreme court noted that it would "limit [its] discussion to only those errors which are adequately supported by citation to the record and applicable legal precedent." Madej II, 177 Ill.2d at 157-58. This is a procedural bar that would act as an independent and adequate state ground precluding

review by this Court. See Harris v. Reed, 489 U.S. 255, 103 L. Ed. 2d 308, 109 S. Ct. 1038 (1989). To be "adequate," the state rule must be "firmly established and regularly followed." James v. Kentucky, 466 U.S. 341, 348, 80 L. Ed. 2d 346, 104 S. Ct. 1830 (1984). Petitioner maintains that the Illinois court inconsistently applied this rule by addressing the torn pants and crushed green plant arguments and ignoring the 911 tape argument that was briefed in the same manner. Thus, according to petitioner, an adequate state ground barring relief does not exist because the Illinois Supreme Court arbitrarily applied a procedural doctrine. See Rosa v. Peters, 36 F.3d 625, 633 (7th Cir. 1994). After reviewing the petitioner's brief on post-conviction review, this Court can not find any meaningful difference in the manner the three issues were briefed. Thus, this Court will address the merits of all three claims of ineffective assistance of appellate counsel.

To prevail on a claim of ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice. Strickland, 466 U.S. at 687-88; Mason v. Hanks, 97 F.3d 887, 892 (7th Cir. 1996). Appellate counsel's performance is deficient if counsel fails to appeal an issue that is both obvious and clearly stronger than one that was raised. Winters v. Miller, No. 00-1125, 2001 U.S. App. LEXIS 26882 at *12 (7th Cir. Dec. 19, 2001); Williams v. Parke, 133 F.3d 971, 974 (7th Cir. 1997). It is not necessary, however, that appellate counsel "raise every non-frivolous issue under the sun." Mason, 97 F.3d at 893. In addition, a petitioner demonstrates the requisite prejudice only when appellate counsel fails to raise an issue that "may have resulted in a reversal of the conviction, or an order for a new trial." Id.

The Illinois Supreme Court denied the ineffective assistance of appellate counsel claim, finding that petitioner failed to make the requisite showing of prejudice under Strickland. Madej II, 177 Ill.2d at 143-44. As this Court stated in Claim VI, petitioner was not prejudiced by trial counsel's failure to introduce the 911 tape, thus it was not ineffective assistance for appellate

counsel not to raise the issue. This issue would not have resulted in reversal of Madej's conviction or a new trial. The crushed green plant and torn pant arguments are addressed in detail below in Claims IX and X. Since the arguments are not meritorious, petitioner was not prejudiced by counsel's failure to raise them on direct appeal.

3.    Post - Conviction

Petitioner claims that he was denied the effective assistance of counsel at his post-conviction hearing because counsel did not raise trial counsel's failure to introduce the 911 tape and failure to raise the Vienna Convention claim. As this Court has found in Claims V and VI, petitioner was not prejudiced by the failure to raise either of these issues. Accordingly, there is no reason to address whether petitioner is entitled to effective assistance of counsel on post-conviction review.

E.    Prosecutorial Misconduct and Failure to Preserve Evidence (Claims IX and X)

1.    Prosecutorial Misconduct

Petitioner first alleges that the State elicited false testimony from Detective Grant that no drugs had been seized from the Petitioner at the time of the arrest. According to petitioner, the State knew that "crushed green plant material" had been taken from the Petitioner's possession at the police station. Thus, petitioner alleges that the police officer's testimony created the false impression that no evidence existed which would have corroborated the Petitioner's testimony concerning his ingestion of drugs. Petitioner next alleges that the prosecutor's statement in closing argument that the victim's pants were "torn" was a misstatement of the evidence because photographs presented in the post-conviction hearing show that the pants were not torn. Such statements, according to petitioner, were used to sway the jury on the close question of whether Madej had used force to rape and commit deviate sexual assault. Petitioner further claims that the

-26-

prosecutor misstated evidence when he claimed that there was no evidence of two male suspects being pursued by police. According to petitioner, a 911 tape was made that memorializes the police pursuit of Madej and another white man in the car. Thus, petitioner alleges the state knew there was evidence of another suspect being involved but falsely told the trial court there was none. Finally, petitioner alleges that the testimony of Mr. Garceau, David Doyle, and James Bunker varied significantly from the statements they gave to the police immediately following the incident.

On direct appeal, the Illinois Supreme Court rejected petitioner's claim that the prosecutor's comments during closing argument, regarding the bag of crushed green plant material, had denied him a fair trial. Madej I, 106 Ill.2d at 214-15. In the post-conviction proceeding, the Illinois Supreme Court did not address the issue of whether the prosecutor had elicited false testimony, finding that Petitioner's arguments concerning the bag of green plant were previously rejected by the court on direct appeal, and therefore, barred by the doctrine of res judicata. See Madej II, 177 Ill.2d at 158. Since, the claim was fairly presented to the state court, this Court will address the merits.

The Supreme Court has clearly established that a prosecutor's knowing use of perjured testimony violates the Due Process Clause. See United States v. Agurs, 427 U.S. 97, 103 & n.8, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976); Pyle v. Kansas, 317 U.S. 213, 215-16, 87 L. Ed. 214, 63 S. Ct. 177 (1942); Mooney v. Holohan, 294 U.S. 103, 110, 79 L. Ed. 791, 55 S. Ct. 340 (1935) (per curiam). When the defendant argues that the government allegedly used perjured testimony, to warrant setting the verdict aside and ordering a new trial, the defendant must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the finder of fact. See United States v. Saadeh, 61 F.3d 510, 523 (7th Cir. 1995); United States v.

Adcox, 19 F.3d 290, 295 (7ᵗʰ Cir. 1994); United States v. Verser, 916 F.2d 1268, 1271 (7th Cir. 1990); United States v. Douglas, 874 F.2d 1145, 1159 (7ᵗʰ Cir. 1989) (citing Napue v. Illinois, 360 U.S. 264, 269-71, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959)). "Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." United States v. Verser, 916 F.2d 1268, 1271 (7ᵗʰ Cir. 1990) (internal citations and quotation marks omitted). "The alleged perjured testimony must bear a direct relationship to the defendant's guilt or innocence." Adcox, 19 F.3d at 295.

When a defendant alleges that the prosecution used perjured testimony, the court must determine whether the defendant had an adequate opportunity to expose the alleged perjury on cross-examination. See Saadeh, 61 F.3d at 523. A defendant need not prove beyond a reasonable doubt that the witness's testimony was "knowingly false (and hence perjury)." United States v. Boyd, 55 F.3d 239, 243 (7th Cir. 1995). In fact, "the wrong of knowing use by prosecutors of perjured testimony is different, and misnamed--it is knowing use of false testimony. It is enough that the [finder of fact] was likely to understand the witness to have said something that was, as the prosecution knew, false." Id. Thus, perjury is not used in a technical, legal sense in these types of cases, but rather as a term of art that describes the knowing use of false testimony.

In this case, petitioner is unable to establish that prosecutors knowingly and intelligently introduced the allegedly false testimony of Detective Grant. The mere fact that a bag of crushed green plant was inventoried by the police as an item taken from the victim's car does not necessarily lead to the conclusion that Detective Grant lied when he testified that no drugs had been seized from petitioner at the time of his arrest. As the Illinois Supreme Court found on direct appeal, there was no evidence that the bag of crushed green plant contained marijuana or any other drug. Madej I, 106 Ill.2d at 214. Thus, the prosecution did not knowingly and intelligently elicit

-28-

false testimony from Detective Grant when it elicited from him that no marijuana or other drugs had been seized from petitioner. Further, petitioner had ample opportunity to cross examine the witness regarding this issue. Habeas relief is denied on this ground.

Petitioner further claims that the prosecutor elicited false testimony from various witnesses. Petitioner claims that (1) Mr. Garceau, the bartender at the Garage Inn where petitioner was seen on the night of the incident, testified at trial that he had to forcibly remove petitioner from the tavern using a baseball bat after having originally told police that the petitioner left the premises without argument; (2) David Doyle testified at trial that he, the victim and the petitioner drove to the restaurant in the victim's car after having originally told police that all rode in the unknown subject's car; (3) James Bunker inferred at trial that the petitioner stole the murder weapon from David Henry but Henry told police that the petitioner simply borrowed his knife; and (4) the state attacked petitioner for fabricating "Hojomota," yet the police listed Bunker's alias as "Hoji Moto" in their reports. Respondent maintains that these claims are procedurally defaulted because they were not presented in state court. See Kurzawa, 146 F.3d at 441. Petitioner argues that there is sufficient "cause and prejudice" to excuse the procedural default because post-conviction counsel was ineffective. While ineffective assistance of counsel at trial or sentencing may excuse procedural default, ineffective assistance at post-conviction proceedings may not. See Morrison v. Duckworth, 898 F.2d 1298, 1301 (7th Cir. 1990) (citing Pennsylvania v. Finley, 481 U.S. 551, 555, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987)); Coleman v. Thompson, 501 U.S. 722, 757, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991) ("Because [the petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas."). As petitioner has not offered any cause other than post-conviction's counsel alleged failure to read the police reports and discover the

-29-

discrepancies, this claim is procedurally defaulted. Thus, this court will not address the merits of the claim.

Petitioner next argues that the prosecutor engaged in misconduct when he stated (1) that the decedent's pants were torn and (2) when he claimed there was "no evidence" of two male suspects being pursued by the police. In evaluating prosecutorial misconduct under governing Supreme Court law, it is not enough that the prosecutor's remarks were "undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 106 S. Ct. 2464 (1986) (citations and quotation marks omitted). As pointed out in Howard v. Gramley, 225 F.3d 784, 793 (7th Cir. 2000), Darden sets forth several factors to inform this inquiry: "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." These factors, however, are not to be applied in a rigid manner, but should be used as a guide to determine whether there was fundamental unfairness that infected the bottom line. For that reason, the weight of the evidence has often been characterized as "the most important consideration." United States v. Morgan, 113 F.3d 85, 90 (7th Cir. 1997); see also Gramley, 225 F.3d at 793. Habeas relief cannot be granted where the prosecutorial misconduct was harmless pursuant to the Kotteakos harmless-error rule, i.e., where the misconduct did not "have substantial and injurious effect or influence in determining the [finder of fact's] verdict." Brecht v. Abrahamson, 507 U.S. 619, 622, 113 S. Ct. 1710, 1714, 123 L. Ed. 2d 353 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)).

The Illinois Supreme Court determined that the prosecutor's argument that the victim's pants were torn, in support of its theory that Barbara Doyle was raped, did not deprive petitioner of a fair trial. The court acknowledged that the prosecutor had used the word "torn" and that petitioner claimed the jeans were "cut" rather than "torn." Madej II, 177 Ill.2d at 161. However, the court also noted "prosecutors are afforded wide latitude in closing argument and improper remarks will not merit reversal unless they result in substantial prejudice to the accused." Id., citing People v. Redd, 173 Ill.2d 1, 30 670 N.E.2d 583 (Ill. 1996). The court "fail[ed] to see how the prosecutor's characterization of the victim's pants constitute[d] reversible error in this case." Id. Further, on direct review, the court rejected petitioner's contention that the sexual relations may have been consensual because of scratch marks on petitioner's face and chest and blood under the victim's fingernails as well as other physical evidence. Madej I, 106 Ill.2d at 218.

This Court finds that the Illinois Supreme Court's resolution of the issue was reasonable. This is not a situation where the prosecution's argument was "misleading and inflammatory" so as to deny petitioner due process of law or a fair trial. The weight of the evidence against the defendant (one of the Darden factors) shows that petitioner's rights were not violated. Whether the pants were "torn" or "cut" cannot be said to be a material factor in Madej's rape conviction where there was substantial physical evidence of rape. Further, the remarks of the prosecutor do not implicate specific rights of petitioner (another Darden factor). The prosecutor did not, for example, comment on the defendant's decision whether to testify, which is protected by the constitution. The prosecutor merely offered his characterization of the evidence on a disputed issue of fact. Thus, habeas relief is denied on this ground.

Petitioner also alleges that the prosecution misstated crucial evidence when the prosecutor objected to defense counsel's cross-examination of a police officer on the basis that there was no

evidence of two male suspects being pursued by the police. Respondent asserts that the claim is procedurally defaulted. Petitioner raised this claim in his brief on appeal from the denial of his post-conviction petition. The state argued in response that the claim had been waived for failure to raise it on direct appeal. The Illinois Supreme Court did not address this issue in terms of prosecutorial misconduct, but did review petitioner's related ineffective assistance of counsel claim regarding the 911 tape, finding that argument to have been waived for failure to raise it on direct appeal on in the post-conviction petition. See Madej II, 177 Ill.2d at 156. "Where a claim is not raised in the trial court and a procedural bar is among the grounds argued by the state on appeal, an affirmance without opinion on appeal is presumed to have rested on that state procedural ground in the absence of any "good reason to question whether there is an independent and adequate state ground for the decision." Coleman v. Thompson, 501 U.S. at 739. Petitioner has presented this Court with no "good reason" to question the state court's decision. Therefore, relief is not warranted on this claim.

Finally, petitioner claims that the state had an obligation to advise the trial judge that it had offered petitioner an eighty-year sentence in exchange for a plea of guilty. The Illinois Supreme Court addressed this issue, finding it to have been waived for failure to cite any legal authority in support. Madej II, 177 Ill.2d at 162. Because the last state court rendering a judgment in the case "clearly and expressly" stated that its judgment on this particular claim rests on a state procedural bar, petitioner can not obtain federal habeas review of the claim. See Coleman v. Thompson, 501 U.S. 722.

2.      Failure to Preserve Evidence

Petitioner alleges that his due process rights were violated because the police failed to preserve the bag of crushed green plant or inventory the prescription bottle bearing Barbara

Doyle's name found in the victim's car. The Illinois Supreme Court addressed these claims under

the rubric of ineffective assistance of counsel even though they were presented as independent

violations. The court stated that "the defendant's arguments concerning the bag of green plant were

previously rejected by this court on direct appeal and, therefore, are barred by the doctrine of res

judicata." Madej II, 177 Ill.2d at 158 (citing Madej I, 106 Ill. 2d at 214). The court addressed the

merits of the pill bottle claim and rejected it. Madej II, 177 Ill.2d at 158-59. Federal review is

precluded only by procedural forfeitures, not by res judicata concerns. Gomez v. Acevedo, 106

F.3d 192, 196 (7th Cir. 1996), vacated on other grounds, 118 S.Ct. 37 (1997). Since both claims

were fairly presented to the state court, this court will address them on the merits.

The Supreme Court has clearly established that when, as in this case, the failure of the

prosecution to preserve evidence is at issue, due process requires that the defendant show that (1)

the government acted in bad faith by not preserving evidence, (2) the exculpatory nature of the

evidence was apparent before its destruction and (3) that the evidence was of such a nature that the

defendant would be unable to obtain comparable evidence by other reasonably available means.

See Arizona v. Youngblood, 488 U.S. 51, 57-58, 102 L. Ed. 2d 281, 109 S. Ct. 333 (1988);

California v. Trombetta, 467 U.S. 479, 488-89, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984); United

States v. Watts, 29 F.3d 287, 290 (7th Cir. 1994).

With regard to the bag of crushed green plant, respondent maintains that petitioner can not

make a threshold showing of bad faith and thus his claim must fail. See, e.g., Arizona v.

Youngblood, 488 U.S. at 58 ("Unless a criminal defendant can show bad faith on the part of the

police, failure to preserve potentially useful evidence" is not unconstitutional); Jones v.

McCaughtry, 965 F.2d 473, 477 (7th Cir. 1992) ("Petitioner must first show bad faith of the

government in the destruction [or loss of the evidence]."). The record reveals no evidence of bad

faith on the part of the police and, in fact, the state post-conviction judge made the factual finding

that the police made every effort to cooperate and try to find the bag of "crushed green plant," but

were unable to locate it.  As petitioner has not come forth with any evidence of bad faith on the

part of the police, habeas relief is denied on this ground.

Unlike the claim about the crushed green plant, the Supreme Court addressed the failure to

preserve the pill bottle.  The Illinois Supreme Court made the following findings in the context of

petitioner's claim that appellate counsel was ineffective for failing to argue that petitioner was

denied due process as a result of the state's failure to preserve the pill bottle:

> With respect to the pill bottle, the record shows that although several of the
> investigating officers had noticed a small plastic bottle on the front seat of Barbara's
> car, they never included the bottle in the police inventory. Defendant claims that had
> the police properly inventoried the bottle, his counsel could have offered the bottle
> into evidence and substantiated his claim that he and Barbara were intoxicated at the
> time of the murder. We disagree.
>
> First, the record already contained substantial evidence of Barbara's intoxication at
> the time of her death, not the least of which was the toxicologist's report showing
> significant amounts of morphine in Barbara's bile. Introduction of the pill bottle,
> therefore, would have only provided an explanation as to the source of Barbara's
> intoxication, a fact which was already accepted by the trial court. Second,
> introduction of the pill bottle would not have substantiated defendant's claim of his
> own diminished capacity. Despite the fact that defendant himself took the stand, he
> never testified that he had ingested any of the drugs purportedly contained in the
> bottle. Thus, even if the State had preserved the pill bottle, its introduction into
> evidence would not have changed the outcome in this case.

Madej II, 177 Ill.2d at 158-59.

Although, the state supreme court analyzed the pill bottle allegation in the context of an

ineffective assistance of appellate counsel claim, rejecting it upon finding no prejudice under

Strickland, the result would be the same if analyzed under Trombetta.  To begin with, this Court is

not persuaded that petitioner can make the threshold showing of bad faith on the part of the police.

Youngblood, 488 U.S. at 58.  Petitioner argues that because Officer Meyer testified that the police

"overlooked" the bottle and that this was unusual, the deviation from police practice establishes bad faith on the part of the police. Even if the threshold showing was made, in order to succeed on a due process claim, petitioner would have to establish that the pill bottle was material to his defense by showing that the evidence possessed exculpatory value apparent before it was destroyed or lost and that it was of such a nature that he was unable to obtain comparable evidence by other means. Trombetta, 467 U.S. at 488. Petitioner can not meet either of these criteria. First, it is unreasonable to conclude that the significance, if any, of the pill bottle to his defense was apparent to police at the time it was found and presumably lost. Second, petitioner could certainly obtain comparable evidence by other means. Petitioner himself provided details about his ingestion, on the day of the murder, of an inordinate amount of drugs and alcohol including at least ten quaaludes, T's and blues, one ounce of marijuana, THC, a couple of cases of beer and Southern Comfort. Further, as the Illinois Supreme Court noted, "the record already contained substantial evidence of Barbara's intoxication at the time of her death, not the least of which was the toxicologist's report showing significant amounts of morphine in Barbara's bile." Madej II, 177 Ill.2d at 158. As petitioner has failed to make out a due process violation under Trombetta, habeas relief is denied.

F.      Defects in the Trial Proceedings and Direct Review (Claims XI - XII)

Petitioner alleges that the police refused to halt their custodial interrogation of him, despite his requests, in violation of his Fifth Amendment rights (Claim XI). Respondent maintains that the claim is procedurally defaulted because petitioner never pursued this claim in the Illinois state courts. Petitioner claims, however, that he argued in his Amended Post-Conviction Petition that his right to remain silent was not scrupulously honored by government agents and that the failure of appellate counsel to raise the argument was ineffective assistance of counsel. Respondent

argues that petitioner is raising an entirely new, separate claim based, not on police coercion as in state court, but instead, on Miranda v. Arizona, 384 U.S 436 (1996) and Edwards v. Arizona, 451 U.S. 477 (1981).

This Court must consider whether Madej raised this issue on direct appeal because "if a petitioner fails to raise an issue in state court proceedings, he cannot raise it for the first time in a federal habeas corpus petition." Kurzawa v. Jordan, 146 F.3d 435, 441 (7th Cir. 1998) (quoting Soleto v. Indiana State Prison, 850 F.2d 1244, 1252 (7th Cir. 1988). Before federal collateral review on a question is appropriate, the state courts must have had a "fair opportunity" to consider a question of constitutional import. See Kurzawa, 146 F.3d at 441. In Kurzawa, the Seventh Circuit set forth its "waiver" analysis which takes account of federal-state comity concerns:

> If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim.

146 F.3d at 441 (citing Pierson v. O'Leary, 959 F.2d 1385, 1393 (7th Cir. 1992).

In petitioner's brief on appeal from denial of post-conviction relief, he claimed that his statement to police was made only after he requested food, medical assistance, a visit, and a telephone call and those requests were denied. The brief also maintains that trial counsel's failure to raise the voluntariness of the confession on direct review was ineffective assistance of counsel . Nowhere does the brief mention a Miranda type claim. Nor does the brief cite either Miranda v. Arizona or Edwards v. Arizona, the two cases on which petitioner relies in his habeas petition. All of the cases cited by petitioner in the post-conviction brief deal with police coercion not police questioning in the face of a request for counsel as do Miranda and Edwards. Petitioner is asserting

an entirely different claim than the one presented to state court. Madej cannot assume that his arguments about coercion were enough to raise his Miranda rights as well, even if the underlying facts are the same. Winsett v. Washington, 130 F.3d 269, 273-74 (7th Cir. 1997). Thus, petitioner is not entitled to relief on his claim because it was never "fairly presented" to the state court.

Petitioner next claims that the trial court violated his right to due process, right to confront witnesses, and his right against cruel and unusual punishment when the judge convicted and sentenced him based on speculation and evidence that was outside the record (Claim XII). After reviewing photographs of the defendant's head, the trial judge stated that Madej's wounds did not appear consistent with his claim of being struck by a flashlight. The trial judge remarked that "a flashlight would normally leave a bruise, not a scratch." Madej II, 177 Ill.2d at 159. Further, the trial judge referred to the fact that defendant's wound was likely an old wound inflicted prior to Madej's incarceration because it was heavily laden with scab formation. Id. The Illinois Supreme Court reviewed this argument in the context of an ineffective assistance of appellate counsel claim for failure to raise such issue on direct appeal. This Court will do the same.

The Illinois Supreme Court found "that appellate counsel's decision not to raise an argument with respect to the trial judge's speculation about defendant's wound was not patently erroneous." Madej II, 177 Ill.2d at 160. The court relied on the fact that the evidence presented at the suppression hearing "strongly supported the trial court's denial of defendant's motion to suppress." Id. The court found that Petitioner's credibility had been severely attacked during cross-examination by the state when he acknowledged being hit in the head with a bottle a few days before the police interrogation. Id. Defendant originally testified that the wound from being hit in the head with the bottle did not require any medical attention. Id. Defendant changed his

story, however, under the pressure of cross-examination and admitted that he had gone to a hospital. Id. The court stated it is the function of trial judge to determine credibility at a suppression hearing and to resolve any conflicts. Id. The trial court found that the inconsistencies in petitioner's testimony reflected adversely on his credibility. Id. at 160. Further, both Officer Grant and Officer Dolan unequivocally denied abusing defendant in any way. Id. at 160, n.4. As a result, the Illinois Supreme Court determined that Madej's counsel was not ineffective for failing to raise the trial judge's statements on appeal because the outcome of the hearing would not have been different had the judge not speculated on the age or origin of the petitioner's head wound. To obtain habeas relief, petitioner must demonstrate that the Supreme Court of Illinois' determination was an unreasonable application of Strickland. Petitioner can not do so. The state high court's decision showed a familiarity with the evidence and reflected a rational application of Strickland. Habeas relief is denied on this ground.

Petitioner further claims that the trial court improperly speculated, in the absence of expert testimony, that Petitioner could not have consumed the amount of alcohol and drugs he testified to having consumed on the date of the murder. Respondent maintains that the trial court merely made a credibility determination, finding that he did not believe petitioner's testimony regarding the amount of drugs and alcohol he allegedly consumed. Since a credibility determination is a finding of fact, respondent argues that it is entitled to a presumption of correctness unless petitioner can rebut it by clear and convincing evidence. Petitioner points to the affidavit of Dr. O'Donnell, an expert in pharmacology, to support its position that it was possible for Madej, having ingested all the drugs and alcohol he testified he did, to lead the police on a high speed chase, jump a fence, run from the scene and hide himself under a parked car until he was apprehended. Dr. O'Donnell's examination of Madej, however, was in 1991, ten years after the crime was committed. Dr.

O'Donnell based his evaluation on his belief that Madej was telling the truth when he related his drug and alcohol history and use on August 22 and 23, 1981 and the intoxicating effects of the drugs and alcohol.

It is clear from the Illinois Supreme Court's opinion, however, that Madej's testimony was not believed by the trial judge. The court rejected Madej's voluntary intoxication defense because his intoxication was not "so extreme as to make impossible the existence of a mental state which is an element of the crime." Madej I, 106 Ill.2d at 216 (citing Ill. Rev. Stat. 1981, ch. 38, par. 6 - - 3). The evaluation of testimony, particularly determinations of credibility, is the "peculiar prerogative of the trier of fact." United States v. Magana, 118 F.3d 1173, 1198 n. 15 (7th Cir. 1997). This Court will not replace the credibility determination of a trial judge, who has experience in observing demeanor of witnesses in judging credibility, with that of an expert in pharmacology. Petitioner has failed to rebut the trial judge's determination with clear and convincing evidence.

Petitioner further argues that he was prejudiced by the trial judge's speculation that the missing pill bottle possibly accounted for the existence of the morphine found in the victim's bile at her autopsy. Petitioner asserts that his defense rested, in part, on establishing that the incident took place as part of a drug transaction that turned violent because petitioner and the decedent were under the influence of an excessive amount of drugs and alcohol. As the Illinois Supreme Court found in connection with another of Petitioner's claims, the toxicologist's report, which was admitted into evidence by way of stipulation, reflected that 14.6 micrograms per millimeter of morphine was found in the victim's bile during the autopsy. Madej II, 177 Ill.2d at 151. "Indeed, the toxicology report itself ... corroborated defendant's claim regarding Barbara's consumption of drugs and alcohol." Id. at 152. According to the court, "the record already contained substantial evidence of Barbara's intoxication at the time of her death..." Id. at 158. Thus, there was never

-39-

any dispute about Barbara's ingestion of drugs. Petitioner claims, however, that the judge's comments invite the conclusion that the pill bottle was a valid prescription which would mean that the decedent was not an illicit drug user. What was important to petitioner's defense, however, was that Barbara had in fact ingested drugs, not that the drugs might have come from a pill bottle allegedly found by police in Barbara's abandoned car. Since the trial judge did indeed consider the fact that morphine was found in Barbara's bile, petitioner can not show harm resulting from the judge's speculation concerning the pill bottle.

Finally, petitioner argues that the trial judge engaged in improper speculation when he determined that the blemishes on the decedent's body shown in the autopsy photographs were caused by petitioner running over the decedent with a car. The Illinois Supreme Court determined that the trial court never stated that it believed that the defendant had run over Barbara's body. See Madej II, 177 Ill.2d at 161. The court found no error in the trial court asking counsel if he could explain why there were "gray and black and blue markings" on the victim's legs. Id. The finding of the Illinois Supreme Court was not unreasonable.

Petitioner maintains that all of the instances of the judge relying on facts outside of the record violate his due process rights. The Supreme Court has clearly established that a defendant is to be judged "solely on the basis of the evidence introduced at trial." Taylor v. Kentucky, 436 U.S. 478, 485 (1978). The instances that petitioner complains of, however, do not involve the judge using un-admitted evidence to convict and sentence the petitioner. In Barclay v. Florida, 463 U.S. 939, 77 L. Ed. 2d 1134, 103 S. Ct. 3418 (1983), the trial judge disregarded the jury's recommendation that the defendant be given a life sentence, and imposed the death penalty. In explaining his decision, the judge compared the defendant's crimes to what he had seen as a soldier in World War II while liberating Nazi concentration camps. The Court rejected the defendant's

argument that the judge acted improperly by considering his own experiences. It explained that separating the sentencer's decision from his life experiences would transform the sentencing process into a "rigid and mechanical parsing of statutory aggravating factors." Barclay, 463 U.S. at 950-51. The Court noted that the "decision calls for the exercise of judgment. It is neither possible nor desirable for a person to whom the State entrusts an important judgment to decide in a vacuum, as if he had no experiences." It was not unreasonable for the Supreme Court of Illinois to find the instances petitioner complains of as non-prejudicial. The judge was merely using his life experiences, not considering outside evidence, to determine the credibility of Madej and convict him. Habeas relief is denied on this ground.

G.    Armed Robbery, Rape and Deviate Sexual Assault (Claim XIII)

Petitioner believes that he is entitled to relief where the evidence was insufficient to find him guilty beyond a reasonable doubt of the felonies of armed robbery, rape and deviate sexual assault, which qualified him for the death penalty. The state bore the burden of proving each element of these offenses beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed. 368 (1970). Petitioner claims that the state's case for armed robbery was weak because the circumstances demonstrated that the force used by the petitioner was completely unrelated to the taking of property. Petitioner also alleges that the evidence used to convict him of rape and deviate sexual assault was entirely circumstantial.

A prisoner's claim that he was convicted on insufficient evidence is cognizable on federal habeas corpus review as a violation of due process, but this Court can only grant habeas relief if the petitioner can show that no rational trier of fact, viewing the evidence in the light most favorable to the prosecution, "could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). We will not re-weigh

the evidence or reevaluate the credibility of the witnesses. United States v. Mejia, 909 F.2d 242,

245 (7th Cir. 1990). A state court's application of Supreme Court precedent is reasonable if it is "at

least minimally consistent with the facts and circumstances of the case." Hennon v. Cooper, 109

F.3d 330, 335 (7th Cir. 1997).

The evidence against Madej was circumstantial but nevertheless overwhelming. The

Illinois Supreme Court stated the following:

> Armed robbery is the taking of property from the person or presence of another by
> the use of force or by threatening the imminent use of force while armed with a
> dangerous weapon. (Ill. Rev. Stat. 1981, ch. 38, par. 18-2.) There was no question
> here that property, the purse and its contents and the auto itself (citation omitted),
> was taken from the victim while the defendant was armed with a dangerous weapon,
> the knife. The defendant claims, however, that the force used against the victim
> was unrelated to the taking of her property but instead was motivated by the dispute
> over the marijuana or to compel sexual relations. The taking of the property, armed
> robbery, was only incidental, he says. We consider that the court properly found
> that there was the felonious taking. That the robbery may have occurred before or
> after the marijuana and sexual-relations incidents does not insulate the defendant
> from the charge and crime of armed robbery.

Madej I, 106 Ill.2d at 217. Under Illinois law, the elements or armed robbery may be proved by

circumstantial evidence. People v. Wiley, 165 Ill. 2d 259, 297, 651 N.E.2d 189, 206, 209 Ill. Dec.

261 (1995). As to the charge of rape, the court stated that the defendant had scratch marks on his

face and chest and the victim had human blood under her fingernails. Id. at 218. The victim's

blouse also had numerous slit marks but she was found naked, which indicated she was stabbed

and then her clothes removed so that she could be raped. Id. "This supports the prosecution's

theory that the victim struggled and fought the defendant until he stabbed her, tore off her clothes,

raped her, and threw her naked body from the car." Id. at 218. The Supreme Court of Illinois

further stated that the autopic evidence was sufficient to show that the crimes of rape and deviate

sexual assault had occurred. Id. Semen and spermatozoa were found in the victim's vagina and

rectum. Id. at 207. Petitioner maintains that he was never specifically connected to the crime. Petitioner, however, was apprehended after leading the police on a high speed chase in the victim's car and was visibly covered with blood belonging to the victim. He was also the last person to be seen with the victim while she was still alive. Viewing this evidence in the light most favorable to the prosecution, we can only conclude that a rational trier of fact could have found the elements of armed robbery, rape and deviate sexual assault proven beyond a reasonable doubt. Thus, the Illinois Supreme Court's decision was reasonable and habeas relief is denied on this ground.

Petitioner also argues that there was insufficient evidence presented at trial to prove beyond a reasonable doubt that he intentionally or knowingly killed Barbara Doyle. Respondent claims that this argument is procedurally defaulted because it has never before been presented to any court for review. Contrary to the respondent's assertion, however, this claim was presented in petitioner's brief on direct appeal. Thus, this court will address the merits of the claim. As stated above, relief will only be granted if no rational trier of fact, viewing the evidence in the light most favorable to the prosecution, "could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

The Supreme Court of Illinois rejected petitioner's argument. The court made clear that voluntary alcohol or drug intoxication is not a defense to a crime unless the intoxication is so extreme as to make the existence of a mental state which is an element of the crime impossible. Madej I, 106 Ill.2d at 216 (citing Ill. Rev. Stat. 1981, ch. 38, par. 6-3; People v. Walcher, 42 Ill.2d 159, 163, 246 N.E.2d 256 (1969)). The court went on to state:

> The record shows that the defendant testified in detail as to the events immediately before and after the murder, including the exact time he left the bar. He gave detailed descriptions of the places to which he drove and routes that he took with the victim to purchase beer. He recounted detailed conversations he had with the victim before the stabbing. The defendant was able to drive the victim's automobile after the murder, lead police on a high-speed chase through Chicago streets and,

> after abandoning the car, was able to flee on foot, jump a fence, and hide under a
> parked car. At the police station, without hesitation, he fabricated an exculpatory
> story as to his whereabouts.

Madej I, 106 Ill.2d at 216-17. Finally the court noted that the "defendant's own testimony and

conduct dispel any notion that he was not able to act knowingly. See People v. Gonzales (1968),

40 Ill.2d 233, 239 N.E.2d 783." In Gonzales, the Supreme Court of Illinois found that the coherent

and detailed nature of the defendant's statements clearly indicated that the defendant had a

cognizance of the events immediately prior to the killing which refuted any argument that his

power of reasoning had been suspended. 40 Ill.2d 233, 242. The Supreme Court of Illinois relied

upon Gonzales in finding that Madej was able to act knowingly. Viewing the evidence in the light

most favorable to the prosecution, a reasonable trier of fact might find that Madej was able to act

knowingly. Thus, habeas relief is denied on this ground.

Petitioner contends that his constitutional rights were violated when the Illinois Supreme

Court relied on the report of a psychiatrist when determining that petitioner was not functioning

under extreme mental or emotional disturbances at the times of the crimes (Claim XIV). The

psychiatrist report was never entered into evidence. Respondent maintains that since this argument

was only raised in the petition for rehearing on direct review, the exhaustion requirement is not

satisfied. As petitioner points out, respondent did not argue that the claim was procedurally

defaulted. Thus said argument is waived and this Court will deal solely with the exhaustion issue.

Doe v. United States, 50 F.3d 693, 698-99 (7th Cir. 1995).

Habeas corpus petitioners exhaust all of their state-court remedies when: (1) they present

them to the highest court of the state; or (2) no state remedies remain available to the petitioner at

the time that the federal petition is filed. See Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991).

Petitioner argues that since the Illinois Supreme Court was the court to commit the alleged error,

there was no opportunity prior to the petition for rehearing to raise the argument. See Herndon v. Geogia, 295 U.S. 441, 444 (1935) ("There is no doubt that the federal claim was timely if the ruling of the state court could not have been anticipated and a petition for rehearing presented the first opportunity for raising it."). Petitioner further asserts that there are no longer any state remedies available because in Illinois judicial errors can only be corrected by a court in the term in which that error was made. See Brody v. Hess, 75 Ill. App. 3d 402, 403, 394, N.E.2d 570, 571 (1st Dist. 1979) ("The law is well settled that a court is powerless to amend its final judgment and thereby correct judicial errors after the term at which it was rendered.") Thus, the state remedies have been exhausted because no state relief is available to petitioner. This Court will address the merits of the claim.

It is well established that due process requires a fair opportunity to defend against state accusations. See Chambers v. Mississippi, 410 U.S. 284, 295 (1973). Thus, the right to confront and examine witness is essential, and any limitations on such rights, although proper in certain circumstances, requires close scrutiny. Id. In order to establish a violation of the Confrontation Clause, the defendant is not required to show prejudice with respect to the trial as a whole, but rather, the focus is on individual witnesses. United States v. Sasson, 62 F.3d 874, 882 (7th Cir. 1995). Where the defense is completely foreclosed from exposing the witness' motive or bias to testify, the limitation may directly implicate the defendant's constitutionally protected right of cross-examination. In this case, petitioner was completely foreclosed from exposing the witness' motive or bias to testify because the state court relied on unsworn testimony and defense counsel was never given the opportunity to question the psychiatrist.

In Brecht, the Supreme Court stated that the standard for determining whether habeas relief must be granted is whether the constitutional error "'had substantial and injurious effect or

influence in determining the jury's verdict.' Kotteakos v. United States, 328 U.S. 750, 776, 90 L.Ed. 1557, 66 S.Ct. 1239 (1946). In this case, it can not be said that the psychiatrist report had substantial and injurious effect on the judge's determination of whether the statutory mitigating factor of "extreme mental or emotional disturbance" was present. The psychiatrist report was cumulative, as the trial judge had already rejected defendant's testimony regarding his alcohol and drug consumption as untruthful. Madej I, 106 Ill.2d 201, 222. The court stated that the defendant's claim regarding his intoxication contradicted the evidence of his criminal and other activities. Id. Thus, habeas relief is denied on this ground.

H.     Other Defects in the Sentencing Proceedings (Claims XV-XXI)

Petitioner alleges that counsel's failure to apprise him of the "one-juror rule" resulted in a waiver of rights that was not knowingly and intelligently given. The Supreme Court has clearly established that a valid waiver is "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Waivers must not only be voluntary, "but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). Respondent maintains that knowledge that one of twelve jurors could block the imposition of the death penalty is not a "relevant circumstance" under Brady.

The essential feature of a jury lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from the group's determination of guilt or innocence. Williams v. Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 1905, 1906, 26 L.Ed.2d 446 (1970). In this case, the concrete understanding of a jury trial, which the record discloses that petitioner Madej possessed, was sufficient for a knowing and intelligent waiver. He understood that the

choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his sentence determined by a judge. Since he had a concrete understanding of that choice, he was in a position to determine whether an invocation of his right to a jury trial was necessary to effectuate its purpose. Madej's waiver is not invalid merely because he was not informed that one juror could block imposition of the death penalty.

The Illinois Supreme Court found, on the basis of petitioner's colloquy with the judge and the written waivers, that Madej intelligently and voluntarily waived his right to have a jury determine his sentence. Madej I, 106 Ill.2d at 221. The court noted that the defendant discussed the matter with his attorney and acknowledged that he understood he was deciding to have sentence imposed by the trial court and to waive a jury. Id. Further, the trial judge fully advised Madej of the right and Madej stated his wish to have the court sentence him. Id. Under 28 U.S.C. § 2254(e)(1) a state court's factual findings are presumed to be correct. Whether a waiver was knowing and intelligent is a question of fact. Mikel v. Thieret, 887 F.2d 733, 739 (7th Cir. 1989). The trial court's finding that Madej's waiver was voluntary is therefore presumed to be correct and cannot be disturbed unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1)

In Claim XVI, petitioner claims that he was not eligible for the death penalty because the state failed to prove beyond a reasonable doubt that petitioner was guilty of armed robbery, rape, deviate sexual assault, and knowing or intentional murder. This court has rejected these arguments above in Claim XIII. Thus, habeas relief is denied on this ground.

Petitioner next argues that the trial court failed to consider all mitigating evidence at the sentencing hearing (Claim XVII). Petitioner maintains that the fact that the state offered petitioner a term of eighty years in return for a guilty plea is a mitigating factor of which the trial court should

have been advised. While this argument was raised in state court, the Illinois Supreme Court did not address the merits because no legal authority was cited in support of the claim. This state procedural bar is an adequate state ground barring review in this court.[4] See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

Petitioner also contends that the absence of evidence that he had a "significant prior criminal history" was a mitigating factor which, as a matter of law, precluded the imposition of the death penalty. This is an incorrect statement of Illinois law. A death penalty hearing in Illinois consists of a two-stage process. At the first stage, it is determined whether someone is eligible for the death penalty. Illinois has a non-weighing statutory scheme to determine if someone is eligible for the death penalty. The weighing and balancing of aggravating and mitigating factors takes place only during the second stage, after a defendant is found eligible for the death penalty and is done to determine whether the death sentence should in fact be imposed. 720 ILCS 5/9-1(h). Here, at the first stage of the sentencing proceedings, the trial judge expressly found the existence of the statutory aggravating factor of murder in the course of another felony. 720 ILCS 5/9-1(b)(6). After the trial judge determined that the defendant was eligible for the death penalty, the trial judge was free to consider, any relevant and reliable evidence in aggravation and mitigation. 720 ILCS 5/9(c). One factor that may be considered in mitigation is that the defendant has no significant history of prior criminal activity. 720 ILCS 5/9-1(c)(1). Proof of one mitigating factor, by itself, will not always preclude the imposition of the death sentence. People v. Brownell, 79 Ill. 2d 508, 537-38, 404 N.E.2d 181, 38 Ill. Dec. 757 (Ill. 1980). Instead, the sentencing authority must

---

[4]Even in its habeas petition, petitioner does not cite any legal precedent for the proposition that the state had an obligation to advise the court of a plea offer because such offer represented mitigating evidence. Instead, petitioner cites Eddings v. Oklahoma, 455 U.S. 104, 115 (1982) for the bare proposition that a defendant has a constitutional right to have all mitigating factors that preclude the imposition of the death sentence considered at the death penalty hearing.

carefully weigh the factors, aggravating and mitigating, in order to reach a fair and just result, one that is based on the particular circumstances of the offense and the defendant. See Proffitt v. Florida, 428 U.S. 242, 252, 49 L. Ed. 2d 913, 922, 96 S. Ct. 2960, 2966 (1976). Thus, the sentencing court's determination as to whether Madej had a significant prior criminal history would not, on its own, preclude imposition of the death penalty. Rather, it would be a factor the sentencing court could weigh against the aggravating factors.

The Illinois trial court determined that Madej had a significant prior criminal history due to four prior criminal convictions: one for robbery, one for auto theft, and two for criminal trespass to property. Madej I, 106 Ill.2d at 221. Evidence of the convictions was introduced into evidence at trial and at the sentencing hearing. Id. Based on this, the Illinois Supreme Court determined that the trial court did not err in finding a "significant history of prior criminal activity." Madej I, 106 Ill.2d at 221. Petitioner maintains that the trial court erroneously concluded that petitioner had a significant prior criminal history because robbery is not a crime of violence. People v. McCoy, 63 Ill.2d 40, 344 N.E.2d 436 (1976). Thus, according to petitioner, the convictions were only for petty offenses and do not constitute a significant prior criminal history. Petitioner does not cite any authority for its proposition that under Illinois law a history of petty offenses can not constitute a significant prior criminal history under 720 ILCS 5/9-1(c). Thus, it was not unreasonable for the Illinois Supreme Court to affirm the trial court's finding of a significant history of prior criminal activity.

Petitioner's final contention with regard to this issue centers on the court's alleged failure to consider as mitigating evidence an emotional disturbance which may have been less than "extreme." The Illinois Supreme Court found that the trial court did consider, but rejected, the evidence of "less than extreme mental and emotional disturbance." Madej I, 106 Ill.2d at 222.

This court reviews the Illinois Supreme Court's determination for reasonableness. Since the court's decision is at least "minimally consistent" with the facts of the case, it is not unreasonable. Habeas relief is denied on this ground.

In Claim XVIII, petitioner alleges that general deterrence was an improper ground upon which to base his sentence of death. The Illinois Supreme Court, in affirming the dismissal of Petitioner's Amended Post-Conviction Petition, determined that the trial court properly meted out the death sentence in order to discourage other criminals from "repeat[ing] this kind of behavior on innocent victims in our society." Madej II, 177 Ill.2d at 138. It has been clearly established by the Supreme Court that the death penalty must be warranted by the unique aggravating and mitigating circumstances surrounding an individual defendant. See Gregg v. Georgia, 428 U.S. 153, 198 (1976). Respondent maintains that the issue is procedurally defaulted because it was not raised in petitioner's brief on appeal from the denial of his post-conviction petition. Petitioner concedes that the issue was not raised in state court but argues that there is cause and prejudice that justifies excusing the procedural default and reaching the merits of the claim. Petitioner maintains that cause exists because "the overall fairness of the entire proceedings" was impugned by the constitutional errors raised in petitioner's amended petition for writ of habeas corpus. See Wainwright v. Sykes, 433 U.S. at 95-96 (Stevens, J. concurring) (noting that "overall fairness of the entire proceeding" may fall within the rubric of "cause"). This Court does not agree. Prejudice can not be shown because there is not a reasonable probability that the outcome would have been different if the court did not take this impermissible factor into account. Once the trial court found the statutory aggravating factor of murder in the course of a felony in stage one, it was required to impose the death penalty unless it found mitigating factors sufficient to preclude the imposition of

the death sentence in stage two. 720 ILCS 5/9-1(h) . Thus, the use of general deterrence as an aggravating factor could not have prejudiced petitioner. Habeas relief is denied on this count.

In claim XIX, petitioner alleges that the death sentence imposed upon Gregory Madej is excessive in that the record does not justify the sentence and reveals that it was predicated upon at least three specific abuses of discretion. In evaluating petitioner's argument that death was an excessive sentence, the Illinois Supreme Court reviewed the record and believed that the trial court "properly afforded defendant an individualized assessment of all relevant circumstances, and further did not act out of caprice or compassion in imposing the sentence of death." Madej II, 177 Ill.2d at 163. The court further noted that "the evidence in aggravation was ample despite the mitigation now submitted by defendant." Id. The petitioner attacks the state court's determination as unreasonable. The determination of the Illinois Supreme Court was reasonable. The court stated:

> [t]he determination of the propriety of a death sentence in any particular case 'requires consideration of the character and record of the individual offender and the circumstances of the particular offense.' People v. Pasch, 152 Ill.2d 133, 201 (1992), quoting Woodson v. North Carolina, 428 U.S. 280, 304, 49 L. Ed. 944, 961, 96 S.Ct. 2978, 2891 (1976). Accordingly, although we will conduct a thorough evaluation of the record when reviewing a sentence of death, we will not lightly overturn the trier of fact's findings where those findings are amply supported by the record. People v. Pasch, 152 Ill.2d at 201, 178 Ill.Dec. 38, 604 N.E.2d 294; People v. Odle, 128 Ill.2d 111, 130-32, 131 Ill.Dec. 53, 538 N.E.2d 428 (1988). See also People v. Walker, 109 Ill.2d 484, 506, 94 Ill. Dec. 530, 488 N.E.2d 529 (1985) (holding that supreme court's limited authority upon review does not permit reversal where "there is no indication that the [sentencer] imposed the penalty on other than a reasoned basis").

Madej II, 177 Ill.2d 116, 162-63. The Illinois Supreme Court rationally applied the pertinent doctrines. Thus, habeas relief is denied on this ground.

In Claim XX, petitioner argues that the court improperly sentenced him to death based on non-statutory aggravating circumstances which rendered the sentence of death arbitrary.

Respondent maintains that the claim is procedurally defaulted because petitioner never raised it on direct review. Respondent's contention is without merit. Petitioner's brief on direct review claims that the trial court sentenced him to death in violation of the Eighth Amendment when the trial court based the sentence on non-statutory aggravating factors, thus making the sentence arbitrary and unguided. It is beyond dispute that this claim was "fairly presented" to the state court. Thus, this Court will address the merits of the claim.

Petitioner takes issue with the trial court's use of brutality of the crime, defendant's untruthfulness in testifying, and the need to discourage others from preying upon the innocent, as non-statutory aggravating factors. Petitioner argues that brutality is an impermissible aggravating factor because since all murders can be considered brutal there is no means to distinguish one defendant from another. Petitioner makes a similar argument for untruthfulness in that if a defendant testifies and is found guilty then the assumption is that he testified untruthfully, thus making it impossible to distinguish between two defendants that testified and were convicted. Finally, petitioner argues that discouraging others is an impermissible aggravating factor because it violates his constitutional right to an individualized sentencing determination. Here, at the first stage of the sentencing proceedings, the trial judge expressly found the existence of the aggravating factor of murder in the course of a felony, which independently rendered the defendant eligible for the death penalty. The trial judge was free to consider, at the second stage of the sentencing hearing, the circumstances of the defendant's offenses. The Illinois Supreme Court has consistently held that the sentencing body is free in the second phase of the sentencing hearing to consider any relevant and reliable evidence in aggravation and mitigation, including the brutal and heinous manner in which the defendant murdered his victim. People v. Terrell, 132 Ill. 2d 178, 225, 138 Ill. Dec. 176, 547 N.E.2d 145 (Ill. 1989). Thus, this Court finds no error in the trial court's

consideration of the above mentioned non-statutory aggravating factors and habeas relief is denied.

In Claim XXI, petitioner alleges that the Illinois Supreme Court did not conduct the required "proportionality review" of his death sentence when it failed to distinguish between his case and other cases in which the court found the death sentence to be an inappropriate penalty. Respondent maintains that this issue is procedurally defaulted because Madej did not raise it in state court. Petitioner did, however, raise this issue in its amended post-conviction petition and on appeal to the Illinois Supreme Court. Thus, this Court will address the merits of the claim.

To begin with, it is not clearly established law that a state must perform a proportionality comparison in every case. It is, however, established that a state must provide a meaningful appellate review as an essential factor in precluding the arbitrary and capricious imposition of the death penalty. See Parker v. Dugger, 498 U.S. 308 (1991). Petitioner is arguing that because the Illinois Supreme Court has vacated the death sentences in other cases by finding death to be an inappropriate penalty, it created a liberty interest because it provided criminal defendants with a "substantial and legitimate expectation" of certain procedural protections. See Hicks v. Oklahoma, 477 U.S. 343, 346. This Court can not say, however, that the state court failed to provide a meaningful appellate review. The court reviewed the nature of the crime and the mitigating evidence and determined that death was the appropriate penalty in this case. Habeas relief is denied on this ground because the state court's appellate review was not unreasonable.

I.    Defects in Post-Conviction Proceedings (Claims XXII - XXV)

Petitioner claims that on post-conviction review , the trial court erred when it failed to refer the motion for substitution of judge for cause to another judge (Claim XXII). Respondent argues that the state supreme court's application of the law to the facts was reasonable.

-53-

The Illinois Supreme Court found that the trial court had not abused its discretion in denying the petitioner's motion for substitution of judge. Madej II, 177 Ill.2d at 164. In applying the applicable law governing motions for substitution of judges at the post-conviction stage, the court determined that petitioner had no absolute right to a substitution of judge and that he had failed to prove that he had been "substantially prejudiced." Id. at 164. The court noted, "the same judge who presided over the defendant's trial should hear his post-conviction petition, unless it is shown that the defendant would be substantially prejudiced." Id., citing People v. Hall, 157 Ill.2d 324, 331 (1993) (rev'd on other grounds, 106 F.3d 742 (7th Cir. 1997)) (further citations omitted). After "carefully review[ing] the transcript in this respect," including the fact that years had passed before an amended petition had actually been filed, the court could find "no evidence of any bias on the part of the circuit court in this matter." Id. at 164. Rather, it believed that the trial court had an "understandable frustration with the progress of the case[]" and found that the trial judge had not abused his discretion in denying the petitioner's motion for substitution of judges. Id. After reviewing the facts and the precedent upon which the Illinois Supreme Court relied, this Court finds the Illinois Supreme Court's decision reasonable. Thus, habeas relief is denied.

In Claim XXIII, petitioner alleges that the post-conviction court should have granted his discovery requests and that the Illinois Supreme Court was in error for not addressing his claim. Respondent claims that the Illinois Supreme Court's decision rested on an adequate and independent state ground. The Illinois Supreme Court acknowledged that Petitioner had argued in his brief that the trial court erred in denying his request for discovery, but the court stated that "defendant fail[ed] to specify, in his brief, the nature of the alleged error. Consequently, we are unable to review this claim." Madej II, 177 Ill.2d at 164. In any appellate proceeding in the State of Illinois, issues presented to the court must be supported with case law and record cites as

required by Supreme Court Rule 341(e)(7) (134 Ill.2d R. 341(e)(7)). Such rule provides that an appellant's brief must contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." and mere contentions, without argument or citation of authority, do not merit consideration on appeal. After determining that petitioner had failed to satisfy this rule, the court found that the issue could not be addressed. Petitioner maintains, however, that he pursued this claim with specificity in his brief before the Illinois Supreme Court. The portion of the brief petitioner refers to discusses post-conviction counsel's obligation to present the defendant's petition and obtain evidentiary support for the claims. It does not identify the discovery requests that were improperly denied or on what basis the evidentiary rulings should be overturned, nor does it cite any cases as the Supreme Court Rules require. Thus, the Illinois Supreme Court's decision is based on adequate and independent state grounds and this court will not address the merits of the claim.

In Claim XXIV, petitioner claims the post-conviction court was in error when it failed to consider the mitigating evidence which was presented by counsel through the form of an amended post-conviction petition and affidavits in support. Respondent alleges that the petitioner never gave the state court the opportunity to address this issue and has thus forfeited the right to have this argument heard on the merits in this habeas proceeding. Petitioner responds that this claim relates to the Illinois Supreme Court's decision on post-conviction review, and accordingly, this is the first time Petitioner may raise this issue. See Helton v. Fauver, 930 F.2d 1040, 1043-44 n.6 (9th Cir. 1990); see also Saunders v. Shaw, 244 U.S. 317, 320 (1917) ("But when the act complained of is the act of the Supreme Court, done unexpectedly at the end of the proceeding, when the plaintiff in error no longer had any right to add to the record, it would leave a serious gap in the remedy for infraction of constitutional rights if the party aggrieved in such a way could not come here. The

defendant was not bound to contemplate a decision of the case before his evidence was heard and therefore was not bound to ask a ruling or to take other precautions in advance."). This court will address the merits of the claim since it is defendant's first opportunity to raise the claim.

Petitioner argues that his constitutional rights to due process and equal protection were violated when the post-conviction court failed to consider all mitigating evidence. The Illinois Supreme Court noted that "[a]fter thoroughly reviewing all of the mitigating material submitted in support of the amended petition, the trial judge denied relief without an evidentiary hearing. The judge ruled that 'there [were] no justifiable grounds upon which relief can be granted.'" Madej II, 177 Ill.2d at 137. Petitioner alleges that the state high court's decision was a conclusory comment devoid of record support because it incorrectly assumed that the post-conviction trial court re-weighed the evidence presented at sentencing in light of the new evidence presented in post-conviction proceedings. It is clear, however, from the state court's opinion that it extensively reviewed the mitigating evidence. See Madej II, 177 Ill.2d at 137-40 (discussing all the evidence presented in mitigation in the amended petition). It is difficult, if not impossible, for this court to find a violation of the defendant's due process rights where the state supreme court evaluated each piece of mitigating evidence. Further, petitioner has not offered any case law in support of his proposition that his rights were violated. It is not the duty of this Court to do petitioner's research in order to support his claim. See Guess?, Inc. v. Chang, 912 F.Supp.372, 380 n.12 (N.D. Ill. 1995) (noting that court may consider argument waived because litigant cited no case law or analysis). Thus, habeas relief is denied on this ground.

Petitioner next claims that his constitutional rights were violated where the trial court dismissed his post-conviction petition without a hearing (Claim XXV). Petitioner argues that the Illinois Supreme Court should have remanded for re-sentencing because it could not make a fair

and appropriate sentencing determination based upon a cold record. Further petitioner argues that the Illinois Supreme Court failed to make an individualized sentencing determination as required by the Eighth and Fourteenth Amendments and that the Illinois Supreme Court's decision violated fundamental fairness. Respondent argues that a claim that the state court improperly failed to hold a hearing in connection with a post-conviction petition is a claim that the state court did not follow state law. Since violations of state law are not cognizable in a habeas proceeding, respondent maintains petitioner's claim must be rejected. See Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L. Ed.2d 606 (1990); Pulley v. Harris, 465 U.S. 37, 41, 79 L. Ed. 2d 29, 104 S. Ct. 871 (1984); Rose v. Hodges, 423 U.S. 19, 21-22, 46 L. Ed. 2d 162, 96 S. Ct. 175 (1975) (per curiam).

Under Illinois law, in order to require an evidentiary hearing, a post-conviction petition must make a substantial showing that the defendant's constitutional rights have been violated. People v. Gaines, 105 Ill.2d 79, 91-92, 473 N.E.2d 868 (1984); People v. Curtis, 48 Ill.2d 25, 27-28, 268 N.E.2d 29 (1971). Petitioner maintains that its claim is one of federal constitutional law. Even assuming, arguendo, that the claim stated by petitioner is a violation of federal rather than state law, relief is not warranted. The Supreme Court has never established that an appellate court's failure to remand a capital case for re-sentencing when faced with evidence in mitigation not presented to the sentencing court amounts to a constitutional violation. Petitioner cites dicta and concurring opinions from several Supreme Court cases, both civil and criminal, regarding the trier of fact's superior ability to judge the credibility of witnesses and make an individualized sentencing determination. See, e.g. Clemons v. Mississippi, 494 U.S. at 769 (Blackmun, Brennan, Marshall, and Stevens, JJ., concurring in part and dissenting in part); Anderson v. Bessemer City, 470 U.S. 564, 575 (1985) (a civil case); Satterwhite v. Texas, 486 U.S. 249, 262 (Marshall and Brennan, JJ., concurring). The mere fact that the trier of fact is better equipped to judge credibility

and make an individualized determination does not mean that a constitutional violation results

when said determination is made by an appellate court. It would take much more than an extension

of that principle to make what occurred in the state court a constitutional violation. As petitioner

has failed to show that the Illinois Supreme Court's adjudication was contrary to or an

unreasonable application of Supreme Court precedent, habeas relief is denied on this ground.

J.      Defects in the Illinois Capital Sentencing Scheme (Claims XXVI- XXX)

Petitioner attacks the constitutionality of several aspects of the Illinois capital sentencing

scheme. In Claim XXVI, petitioner maintains that he was denied his constitutional rights to due

process and equal protection because the Illinois Death Penalty Statute vests the prosecutor with

the traditional judicial function of sentencing by granting him the sole and unfettered discretion to

convene a death penalty hearing. To prevail on his claim, Petitioner "must show that the state

court's decision [upholding the constitutionality of the Illinois death penalty statute] 'was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States.'" Holman v. Gilmore, 126 F.3d 876, 885 (7th Cir. 1997)

(quoting § 2254(d)(1)). Petitioner's claim was rejected on direct review. Madej I, 106 Ill.2d at 211.

In Silagy v. Peters, 905 F.2d 986 (7th Cir. 1990), *cert denied,* 498 U.S. 1110 (1991), the Seventh

Circuit found that the Illinois death penalty statute is constitutional even though it gives the

prosecutor unfettered discretion to determine whether to seek the death penalty in a particular case.

905 F.2d at 993. According to the Silagy court, the Eighth Amendment is not implicated because

the prosecutor's decision to commence or forgo a death sentence hearing is not a decision to

impose the death sentence. Id. Thus, petitioner is unable to show that the Illinois Supreme Court's

decision resulted in an adjudication that was contrary to clearly established federal law as

determined by the United States Supreme Court.

Petitioner next argues, in Claim XXVII, that he was denied his constitutional rights because the Illinois death penalty statute does not require a pre-sentence investigation report in a bench sentencing. Petitioner makes an as applied rather than facial challenge to the statute. Petitioner essentially claims that the lack of presentence report in his case was unconstitutional in light of Supreme Court precedent requiring heightened procedural protection before imposing a sentence of death and because virtually no evidence was presented in mitigation at the sentencing hearing. Again, to prevail petitioner must show that the Illinois Supreme Court's decision upholding the constitutionality of the sentencing scheme was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

The Illinois Supreme Court rejected petitioner's claim on direct appeal. Madej I, 106 Ill.2d at 212 (finding that there was sufficient evidence to substantially fulfill the purpose of a pre-sentence investigation report). On post-conviction review, petitioner's claim was similarly rejected but the court acknowledged that the evidence presented was "tantamount to the presentation of no evidence at all." Madej II, 177 Ill.2d at 134. The Supreme Court has stated "because there is a qualitative difference between death and any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.'" Zant v. Stephens, 462 U.S. 862, 884 (1983) (quoting Woodson v. North Carolina, 428 U.S. 280, 305 (1976)). See also Eddings v. Oklahoma, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring) ("[T]his Court has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee , as much is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake."). With the concession by the post-conviction court that the evidence presented was "tantamount to the presentation of no evidence at all," this court can not find that the state court's

finding was at least "minimally consistent" with the facts in this case. The imposition of death <u>in</u> <u>this case</u> without the benefit of a pre-sentence investigation was unconstitutional.

In Claim XXVIII, petitioner argues that the Illinois Death Penalty Statute places a de facto burden on the defendant to prove that death should not be imposed in violation of his rights to due process and equal protection. Petitioner raised the same claim on direct review where it was rejected. In <u>Williams v. Chrans</u>, the Seventh Circuit rejected the argument that the Illinois statute places an impermissible burden of persuasion on capital defendants. 945 F.2d at 936. The court, reaffirming its previous decision in <u>Silagy v. Peters</u>, found that the Illinois statute's burden-shifting framework is constitutional. As the District Court noted in the recent opinion in <u>United States ex</u> <u>rel Tenner v. Gilmore</u>, 1998 U.S. Dist LEXIS 16188 (N.D. Ill. Oct. 8, 1998), the <u>Silagy</u> court explained that:

> the statute provides a balance upon which the sentencing authority may place the various mitigating and aggravating factors to determine whether the death sentence is appropriate. The State bears the primary burden of persuading the jury that there are no mitigating factors sufficient to preclude the imposition of the death sentence. The defendant then may attempt to dissuade the jury from imposing the death penalty. If the defendant attempts to do so, the statute imposes a burden of persuasion on him.

Id., *88-89. The imposition of such a burden, according to the <u>Silagy</u> court, is constitutional because "at this point in the hearing the prosecution has already proven beyond a reasonable doubt that a statutory aggravating factor exists making the defendant eligible for the death penalty and the jury is not weighing... the factors presented by both the State and the defendant." <u>Williams</u>, 945 F.2d at 936 (citations omitted). Relief is denied because petitioner is unable to show that the Illinois Supreme Court's decision resulted in an adjudication that was contrary to clearly established federal law as determined by the United States Supreme Court.

In Claim XXIX, petitioner argues that the Illinois death penalty statute's provision that the death penalty may not be imposed upon a similarly situated person who requires "special assistance" at trial renders the statute discriminatory, arbitrary and capricious, in violation of petitioner's rights to due process and equal protection. The Illinois Supreme Court rejected petitioner's claim on direct appeal, relying on its previous decision in <u>People v. Stewart</u>, 104 Ill.2d 463 (1984), where it held that limiting the application of the death penalty to those who did not require "special assistance," as defined by the statute, was not unconstitutionally arbitrary. <u>Madej I</u>, 106 Ill.2d at 212. The Seventh Circuit has agreed with that conclusion. <u>See Pitsonbarger v. Gramley</u>, 141 F.3d 728, 738 (7th Cir. 1998). As the <u>Pitsonbarger</u> court noted, the defendant could not "point to a suspect class that is implicated," and the defendant's "fundamental right to life is not affected by the special statutes of the group to which he directs our attention – those incapable of comprehending why they are being singled out for capital punishment." <u>Pitsonbarger</u>, 141 F.3d at 728. According to the court, "Illinois has drawn a constitutionally defensible line[]" in enacting this section of the death penalty statute. <u>Id.</u> Thus, petitioner can not show that the statute is contrary to or involves an unreasonable application of clearly established Federal law and relief is denied.

Petitioner next claims that his constitutional rights have been violated because the delay in carrying out his sentence constitutes "cruel and unusual punishment" in violation of his Eighth Amendment rights (Claim XXX). He believes that he has been subjected to what has been termed the "death row phenomenon" and that his execution now, many years after his crime,, would serve no legitimate purpose. Respondent first argues that the claim is procedurally defaulted because the state court did not have a full and fair opportunity to review the claim. Procedural default is not a bar in this case, however, because petitioner lacked a factual basis to assert this

claim since it did not ripen until after a substantial delay. Still, there is no law that states that allegedly excessive death row delay should result in relief for a petitioner.

Madej's direct appeal in state court was disposed of in May, 1985, less than four years from the date of his arrest in August, 1981 for the murder of Barbara Doyle. The remaining years since that time have resulted from Madej's pursuit of his discretionary appeals in state court and in this Court. As the Seventh Circuit held in both <u>Free v. Peters</u>, 50 F.3d 1362 (7th Cir. 1995) and <u>Williams v. Chrans</u>, 50 F.3d 1363, 1364 (7th Cir. 1995), any inordinate delay in the execution of those petitioners' sentences was directly attributable to their own conduct. In distinguishing those cases from that of <u>Lackey v. Texas</u>, 514 U.S. 1045, 115 S.Ct. 142 (1995), a case in which a petition for certiori was pending before the United States Supreme Court but was ultimately denied, the Seventh Circuit found that in <u>Lackey</u>, the majority of the time that the defendant had spent on death row was a result of "very protracted proceedings in his mandatory direct appeals to the state supreme court." <u>Free</u>, 50 F.3d at 1362.

Here, however, as in <u>Free</u> and <u>Williams</u>, there was no "protracted proceedings" during petitioner's mandatory appeal. As the state court transcripts demonstrate, the several years of continuances in the state trial court was during petitioner's discretionary appeals and was due to petitioner's own post-conviction attorney who requested those continuances in order to prepare petitioner's amended post-conviction petition. As the court in <u>McKenzie v. Day</u>, 57 F.3d 1493, 1494 (9th Cir. 1995) (en banc), stated,

> [a] defendant must not be penalized for pursuing his constitutional rights, but he also should not be able to benefit from the ultimately unsuccessful pursuit of those rights. It would indeed be a mockery of justice if the delay incurred during the prosecution of claims that fail on the merits could itself accrue into a substantive claim to the very relief that had been sought and properly denied in the first place. If that were the law, death-row inmates would be able to avoid their sentences simply by delaying proceedings beyond some threshold amount of time, while other death-row inmates - less successful in their attempts to delay - would be forced to

face their sentences. Such differential treatment would be far more "arbitrary and unfair" and "cruel and unusual" than the current system of fulfilling sentences when the last in the line of appeals fails on the merits.

Petitioner cannot now complain about the length of time his appeals have taken, nor can he complain about the amount of time he has spent on death row. This is not a situation where the State of Illinois "has set up a scheme to prolong the period of incarceration, or rescheduled the execution repeatedly in order to torture [petitioner]." McKenzie v. Day, 57 F.3d 1461, 1466 (9th Cir. 1995) (*upon denial of mot. for stay of execution*). The delay has been occasioned by petitioner's pursuit of his rights. Thus, habeas relief is unwarranted on this ground.

K.     Cumulative Error (Claim XXXI)

In its final claim for habeas relief, petitioner maintains that when this Court considers the totality of the errors committed at the trial and sentencing hearing, the result of the proceeding was fundamentally unfair. This Court does not believe that the cumulative trial errors, none of which amounted to an independent violation, warrant habeas relief.

### Conclusion

For the reasons discussed above, this Court grants Madej a writ of habeas corpus with regard to his death sentence (Claims I and XXVII) and orders that the state resentence him in a manner that comports with the individualized sentencing requirements of the Eighth Amendment within sixty (60) days of the date of this order. This Court denies relief as to claims II through XXVI and claims XXVIII through XXXI.

Enter:

David H. Coar
United States District Judge

Dated: 3/7/02